Charles HAYS et ux., Petitioners,

v.

Dr. R. W. HALL, Respondent.

No. B–3332.

Supreme Court of Texas.

Dec. 13, 1972.

Rehearing Denied Jan. 17, 1973.

DeVore, Bagby, McGahey & Ross, Philip C. McGahey and William McFarland Bagby, Arlington, for petitioner.

Hill, Paddock & McMaster, Homa S. Hill, Fort Worth, Bailey, Williams, Weber & Allums, C. Edward Fowler, Jr., Dallas, for respondent.

DENTON, Justice.

This is an action brought against a doctor of osteopathy for alleged intentional and fraudulent misrepresentations, breach of implied warranty and for negligence arising from the performance of a vasectomy operation on the plaintiff husband. The trial court sustained the defendant's special exceptions relative to the Statute of Limitations, and upon plaintiffs' failure to amend their petition, the cause was dismissed. Plaintiffs appealed and the court of civil appeals affirmed the trial court's dismissal of the cause for the reason that the suit was filed after limitations had run. 477 S.W.2d 402. We reverse and remand for trial.

Mrs. Hays had given birth to two deformed children, one of whom had died; hence, to avoid the possibility of the birth of other deformed children, Mr. Hays sought to have a vasectomy operation performed for the purpose of his being rendered sterile. Dr. Hall, a practicing doctor of osteopathy, who is alleged to have been aware of Mrs. Hays' childbearing history, and to have known that the purpose of the vasectomy was to remove the possibility of the birth of additional deformed children, performed the surgical operation on Mr. Hays on July 28, 1966.

Approximately one month after the operation, Mr. Hays returned to Dr. Hall to be examined and tested to determine whether or not the operation was successful. Dr. Hall performed a test known as a prostatic massage and informed Mr. Hays that he was sterile.

On September 27, 1967, Mrs. Hays was examined by her physician and was informed that she was pregnant. Mrs. Hays gave birth to their third child on January 11, 1968. This child was born with deformities and died nine months later.

On September 28, 1967, Mr. Hays returned to Dr. Hall and informed him of his wife's pregnancy. Dr. Hall performed another test in the nature of a prostatic massage, informed Mr. Hays that there were no live sperm in his semen, and further advised that Mrs. Hays' pregnancy was caused by sperm cells having been trapped in the seminal tract above the point where the vasectomy incision had been made.

In July 1968, Mrs. Hays was again informed by her physician that she was pregnant. Mr. Hays, upon being tested by prostatic massage a third time by Dr. Hall, was again told that he was sterile. On February 9, 1969, Mrs. Hays gave birth to her fourth child—a normal, well child.

This suit was brought against Dr. Hall on May 16, 1969.

The court of civil appeals correctly noted that our holding in Gaddis v. Smith, 417 S.W.2d 577 (Tex.1967), is expressly limited to causes of action in which a physician leaves a foreign object in the body of his patient. A surgical sponge had been left inside Mrs. Gaddis during an operation. This Court held that, because the patient has no way of knowing that a foreign object has been left in the incision, the cause of action for such negligence "accrues when the patient learns of, or, in the exercise of reasonable care and diligence, should have learned of" the injury. This is not an extension of the limitation period but is merely a recognition that in certain situations it is difficult if not altogether impossible to discover the existence of a legal injury. This recognition gave rise to the holding in *Gaddis* and to the applica-

**414**

tion in other jurisdictions of what has been called the "discovery rule": the Statute of Limitations commences to run from discovery of the injury, or the time discovery should reasonably have been made.

A recent application of the "discovery rule" was made by the Kentucky Court of Appeals in Hackworth v. Hart, Ky., 474 S.W.2d 377 (1971), and that case is strikingly similar to the matter at hand. *Hackworth* involved a vasectomy, a post-operation sperm-count test, and the subsequent pregnancy of the wife. The Kentucky Court, in reversing a directed verdict in favor of the defendant doctor, held that the action was not barred by the Statute of Limitations, and announced the rule that "the cause of action in malpractice cases, where pregnancy is the critical question, commences to run from the time the pregnancy was or should have been discovered", 474 S.W.2d 377, 379.

It is our belief that the rule announced in *Hackworth, supra,* is a wise and proper rule. One who undergoes a vasectomy operation, and then after tests is told that he is sterile, cannot know that he is still fertile, if that be the case, until either his wife becomes pregnant or he is shown to be fertile by further testing. If the limitation period is measured from the date of the operation, and if the discovery of fertility, and therefore the injury, is not made until after the period of limitation has run, the result is that legal remedy is unavailable to the injured party before he can know that he is injured. A result so absurd and so unjust ought not to be possible. Lewey v. H. C. Fricke Coke Co., 166 Pa. 536, 31 A. 261, 28 L.R.A. 283 (1895); Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961); Gaddis v. Smith, *supra,* and cases cited therein.

■■ We hold that in malpractice cases arising from vasectomy operations the Statute of Limitations commences to run on the date of the discovery of the true facts concerning the failure of the operation, or from the date it should, in the ex-

ercise of ordinary care and diligence, have been discovered. We therefore reverse the judgments of the courts below and remand the cause for a trial on the merits.