**Lee Ann TIMBERLAKE,**
**Plaintiff-Appellant,**

v.

**A.H. ROBINS COMPANY, INC.,**
**Defendant-Appellee.**

**No. 83–2180.**

United States Court of Appeals,
Fifth Circuit.

March 9, 1984.

Rehearing and Rehearing En Banc
Denied April 13, 1984.

Jamail, Kolius & Mithoff, Richard Warren Mithoff, Kathleen D. Oliver, Houston, Tex., for plaintiff-appellant.

Fulbright & Jaworski, Terry O. Tottenham, David B. Weinstein, Houston, Tex., for defendant-appellee.

Before RUBIN and RANDALL, Circuit Judges, and MITCHELL *, District Judge.

RANDALL, Circuit Judge:

In this diversity case governed by Texas law, plaintiff-appellant Lee Ann Timberlake appeals the district court's summary judgment in favor of defendant-appellee A.H. Robins Company. For the reasons set forth below, we affirm.

*I. Factual and Procedural Background.*

Timberlake was fitted with a Dalkon Shield intrauterine device (IUD) in May of 1974. The Dalkon Shield was manufactured and marketed by Robins. Timberlake wore the IUD without adverse effect for approximately four years. In March, 1978, Timberlake developed various symptoms, including lower abdominal pain, chills, and fever. She sought medical attention, and her doctor removed the IUD. Her symptoms did not abate but grew progressively worse until, in April, 1978, she was diagnosed as having acute pelvic inflammatory disease and underwent a hysterectomy. At the time Timberlake was told that she would have to have the surgery and after it was performed, her doctor told her that her problems had been caused by the IUD.

In April, 1981, Timberlake saw a television program concerning the Dalkon Shield and became aware that Robins may have been negligent in its manufacture and sale of the product. She filed the instant suit on August 5, 1981, alleging negligence, strict liability in tort, and breach of express and implied warranties.

Robins moved for summary judgment, asserting that all applicable statutes of limitations had expired at the time Timberlake commenced her action. The district court granted the motion, holding that the negligence and strict liability claims were barred by Texas' two-year statute of limitations in personal injury cases; and that the warranty claims were barred by operation of the Texas Uniform Commercial Code's four-year statute of limitations.

Under Federal Rule of Civil Procedure 56(e), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." The burden of showing that no material fact is in dispute is upon the party seeking summary judgment, and every reasonable inference arising from the record must be resolved in favor of the party opposing the motion. *Penton v. Crown Zellerbach Corp.,* 699 F.2d 737, 741 (5th Cir.1983). With this standard of review in mind, we turn to the instant case.

*II. The Texas "Discovery Rule" and the Two-Year Statute of Limitations.*

Under Texas law, an action for personal injury must be brought "within two years after the cause of action shall have accrued." Tex.Rev.Stat.Ann. art. 5526 (Vernon 1982 Supp.). In general, the accrual period is measured from the time of the injury. *See, e.g., Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). An exception to this rule has been applied by the Texas courts, however, "in some situations in which a claimant was unable to know of his injury at the time of actual accrual; the exception is known as the 'discovery rule.'" *Id.* Application of the discovery rule has permitted claimants otherwise time-barred to proceed in suits stemming from foreign objects left in the body during surgery, *see Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967); unsuccessful vasectomies, *see Hays v. Hall,* 488 S.W.2d 412 (Tex.1972); and excessive radiation treatment for cancer, *see Grady v. Faykus,* 530 S.W.2d 151 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n.r.e.). In each of these cases, application of the discovery rule was considered appropriate because the circumstances presented a situation in which the claimant was unable to know of his or her injury at the time it actually occurred. As the court noted in

* District Judge of the Eastern District of Louisiana, sitting by designation.

*Hays v. Hall,* in the context of an unsuccessful vasectomy:

> If the limitation period is measured from the date of the operation, and if the discovery of fertility, and therefore the injury, is not made until after the period of limitation has run, the result is that legal remedy is unavailable to the injured party before he can know he is injured. A result so absurd and so unjust ought not to be possible.

488 S.W.2d at 414.

In the case before us, as we have noted, Timberlake knew of her injury and that it was, in her doctor's opinion, caused by the Dalkon Shield at the time the hysterectomy was performed, which was more than two years prior to the institution of this suit. On appeal, however, she argues that the discovery rule should be applied to permit her action to go forward because she was unaware until April, 1981 that there was possible wrongdoing by Robins. Timberlake urges that Texas law applies a three-pronged analysis with regard to the discovery rule, and that all three elements—injury, causation in fact, and legal injury—must coalesce before the statute of limitations begins to run. We are not persuaded that this is an accurate statement of the applicable law.

Timberlake maintains that her three-pronged theory is supported by our decision in *Fusco v. Johns-Manville Products Corp.,* 643 F.2d 1181 (5th Cir.1981). There, the plaintiff became aware in 1967 that exposure to asbestos could be harmful. In 1970 he learned that he had asbestosis, but did not file suit until 1978. Applying Texas law, we held that under article 5526, "the limitations period commences when the buyer discovers, or in the exercise of ordinary care should have discovered, the injury." *Id.* at 1183. Thus, we affirmed summary judgment for the defendant. Although Timberlake urges us to read *Fusco* to require knowledge of actual injury, cause, and legal injury, we do not accept this interpretation. We stated in *Fusco* that the plaintiff "discovered, or in the exercise of reasonable diligence should have

discovered, his *injury* in 1970." 643 F.2d at 1183 (emphasis added). Because the plaintiff knew prior to being diagnosed that exposure to asbestos could be hazardous, the issue of "legal injury" was not raised, nor did we address it.

Timberlake also relies on our decision in *Roman v. A.H. Robins Co.,* 518 F.2d 970 (5th Cir.1975). Again, this reliance is misplaced. In *Roman* we held that the plaintiff was time-barred under article 5526 where she learned in 1968 that her injury was probably caused by an allergic reaction to the defendant's product, but did not file suit until 1973. Timberlake asserts that *Roman* supports her position because there, the plaintiff did not argue that she lacked knowledge of the defendant's alleged wrongdoing. Timberlake's argument, however, is a non sequitur. As in *Fusco,* in *Roman* we were not called upon to, nor did we, address the "legal injury" issue; neither case supports the inference that had we done so, we would have concluded that Texas law compels us to employ the three-pronged analysis urged by Timberlake.

As we have previously noted, Texas courts have extended the discovery rule to apply to a variety of situations. *See, e.g., Gaddis v. Smith, supra* (foreign object); *Hays v. Hall, supra* (negligent vasectomy); *Grady v. Faykus, supra* (excessive X-ray treatment). In each of these cases, the statutory period was held to have commenced upon the plaintiff's discovery of the injury or its cause. None implies that the statutory period should be tolled until the plaintiff learns that the defendant's conduct may have been wrongful. We recognize that the *Hays* court referred to the difficulty, in vasectomy cases, of discovering the existence of a "legal injury;" thus justifying the tolling of the statute of limitations until the "true facts" concerning the failure of the operation were, or should have been, discovered. 488 S.W.2d at 414; *see also Grady v. Faykus, supra.* However, we do not consider this language an authoritative basis upon which to accept Timberlake's argument. In *Hays* the plaintiff's knowledge of injury and wrongdoing was

necessarily simultaneous; thus, that the court employed the "legal injury" language is not dispositive.[1] Clearly, the relevant "injury" occurred when the plaintiff discovered the injury and its cause in fact. And in *Robinson v. Weaver, supra,* the Texas Supreme Court refused to extend the discovery rule to medical misdiagnosis cases, noting that the rule postpones commencement of the statutory period when the plaintiff is "unable to know of his *injury* at the time of actual accrual." 550 S.W.2d at 19 (emphasis added).

We conclude that Texas law[2] neither countenances nor compels us to apply the discovery rule in the situation before us. Timberlake knew of her injury and its cause in March, 1978. At that point, the statute of limitations was triggered and she had two years in which to investigate any possible wrongdoing by Robins. Her failure to institute this action within the two-year period bars her from proceeding on the theories of negligence and tort.[3]

### III. Fraudulent Concealment.

The district court held that the doctrine of fraudulent concealment was inapplicable to this case, because Timberlake knew in March, 1978 that she had been injured and that the cause of her injury was the Dalkon Shield. Timberlake asserts that summary judgment on this issue was improper because a genuine issue of material fact existed as to whether Robins fraudulently concealed a defect in the Dalkon Shield.

Under Texas law, fraudulent concealment is an affirmative defense to an assertion that the statute of limitations has run. In *Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex.1974), the Texas Supreme Court stated the doctrine as follows:

> When the defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the one to whom it belongs, the guilty party will be estopped from relying on the defense of limitations until the right of action is, or in the exercise of reasonable diligence should be, discovered.

A successful assertion of fraudulent concealment requires the plaintiff to prove that the defendant had actual knowledge of the facts allegedly concealed, and a fixed purpose to conceal the wrong. *See Dotson v. Alamo Funeral Home,* 577 S.W.2d 308, 311 (Tex.Civ.App.—San Antonio 1979, no writ). The "mere failure to disclose a cause of action, or its mere concealment," does not constitute fraudulent concealment for purposes of tolling the statute of limitations. *Stiles v. Union Carbide Corp.,* 520 F.Supp. 865, 868–69 (S.D.Tex.1981). Rather, the plaintiff is under a duty to exercise reasonable diligence to discover his or her cause of action. *See Allen v. Ortho Pharmaceutical Corp.,* 387 F.Supp. 364 (S.D.Tex. 1974); *Nichols v. Smith, supra.* As we not-

---

1. *Grady v. Faykus* also indicates that knowledge of cause in fact, rather than knowledge of wrongdoing, determines the point at which the cause of action accrues. There, the court pointed out that although the plaintiff was treated with radiation in 1969, she was unaware until 1970 that these treatments *caused* her injuries. The court did not indicate that the plaintiff's having become aware at the same time that the treatments were excessive or negligently administered was significant; rather, it concluded that summary judgment was inappropriate where "a fact issue exists about when the plaintiff discovered the true facts concerning the cause of her unfortunate condition . . . ." 530 S.W.2d at 154.

2. Timberlake also cites *Harrison v. United States,* 708 F.2d 1023 (5th Cir.1983); *Dawson v. Eli Lilly & Co.,* 543 F.Supp. 1330 (D.D.C.

1982); and *Nelson v. A.H. Robins Co.,* 515 F.Supp. 623 (N.D.Cal.1981). We note, however, that none of these cases applies Texas law, which we are bound to do in this case.

3. We note that the Texas Supreme Court's most recent discussion of the discovery rule, in a context not applicable here, summarized *Gaddis v. Smith* as holding that "certain inherently non-discoverable causes of action did not *accrue* until the patient learned of, or, in the exercise of reasonable care and diligence, should have learned of the physician's negligent act." *Nelson v. Krusen,* 27 Tex.Sup.Ct.J. 82, 83 (Tex. Nov. 16, 1983) (emphasis in original). We think that this language clearly buttresses our holding here, insofar as it indicates the court's concern with the potential plaintiff's exercise of reasonable diligence.

ed in *Fusco, supra:* "There cannot be fraudulent concealment of facts which admittedly were or should have been known by [the plaintiff]." 643 F.2d at 1184.

Application of these standards to the facts of the case before us compels us to agree with the district court that the doctrine of fraudulent concealment has no application in this case and that summary judgment was proper. Nothing prevented Timberlake from undertaking an investigation or filing suit during the two years after March, 1978. That she did not do so demonstrates her lack of "reasonable diligence" to discover her cause of action, thus negating her assertion of fraudulent concealment by Robins. Even if we assume that Robins had a duty to reveal and instead concealed defects in the Dalkon Shield, Timberlake's actual knowledge of her injury and its cause was adequate to put her on notice that she had a cause of action.

*IV. Breach of Warranty.*

The district court held that Timberlake's claims for breach of express and implied warranty were barred by the statute of limitations. The applicable statute provides:

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

\*    \*    \*    \*    \*    \*

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made,* except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Tex.Bus. & Com.Code Ann. § 2.725 (Vernon 1968) (emphasis added). Despite this language, Timberlake maintains that the statute of limitations for breach of warranty involving personal injury runs from the time of injury rather than from the tender of delivery. She argues that her position is supported by the Texas Supreme Court's decision in *Garcia v. Texas Instruments, Inc.,* 610 S.W.2d 456 (Tex.1980). We do not agree.

In *Garcia,* the court held that a cause of action for personal injury could be maintained under the Uniform Commercial Code regardless of the lack of privity between the parties. The court did not expressly address the issue of when the statute begins to run; however, its analysis supports the district court's interpretation of section 2.725:

We hold that privity of contract is not a requirement for a Uniform Commercial Code implied warranty action for personal injury. Therefore, the implied warranty action of Garcia, filed approximately three years and eight months after the *sale* of the sulfuric acid, is not barred by the [four-year] statute of limitations
. . . .

610 S.W.2d at 465 (emphasis added). This language indicates that the *Garcia* court's focus was on the time of tender of delivery rather than the date of injury. Moreover, we have squarely held, in *Clark v. DeLaval Separator Corp.,* 639 F.2d 1320 (5th Cir.1981), that under Texas law, a cause of action for breach of implied warranty accrues on the date of tender of delivery. *See also Garvie v. Duo-Fast Corp.,* 711 F.2d 47 (5th Cir.1983).[4] At least one Texas court has explicitly endorsed our holding in *Clark. See Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889, 892 (Tex.Civ.App.—El Paso 1983, no writ). We think that these cases, as well as the clear language of section 2.725, preclude Timberlake's action for breach of implied warranty.[5]

---

**4.** As Judge Rubin stated in his concurrence in *Garvie,* although application of *Clark* may result in injustice, "[u]ntil Texas courts definitely

resolve this question, we are bound to follow *Clark.*" 711 F.2d at 49 (Rubin, J., concurring).

**5.** Although Timberlake correctly argues that this interpretation of section 2.725 is inconsist-

With regard to Timberlake's claims based upon express warranty, the district court noted that "[t]he record is totally devoid of evidence that [Robins] made any express warranty to [Timberlake]." We agree, and thus affirm the summary judgment granted to Robins on this issue.

## V. Conclusion.

Because the record of this case demonstrates that there is no material factual issue in dispute, and that Robins is entitled to judgment in its favor as a matter of law, we affirm the district court's summary judgment.

AFFIRMED.

ent with *Morton v. Texas Welding & Mfg. Co.*, 408 F.Supp. 7 (S.D.Tex.1976), we note that we are not bound by the holding in that case. Moreover, we are not persuaded that the *Garcia* court's reference to *Morton* "approved of the holding" in the latter case, as Timberlake asserts: "Conceptual difficulties inherent in the application of the Code to personal injury claims have been resolved on a case by case basis. *See Morton v. Texas Welding & Manufacturing Co.* ...." 610 S.W.2d at 462. We do not consider this reference to be an endorsement of *Morton*.