TRANSPORT INDEMNITY COMPANY, Transport Insurance Company and Allied Van Lines, Appellants,

v.

ORGAIN, BELL & TUCKER, Gilbert I. Low and Hollis Horton, Appellees.

No. 09–92–038 CV.

Court of Appeals of Texas, Beaumont.

Jan. 7, 1993.

Rehearing Denied Jan. 28, 1993.

Steven M. Smoot, Austin, K. Jill Vandagriff, Arthur K. Smith, Calhoun & Stacy, Dallas, for appellants.

John P. Scott, Cruse, Scott, Henderson & Allen, Houston, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Transport Indemnity Company, Transport Insurance Company and Allied Van Lines (collectively referred to as Appellants or Plaintiffs or Transport), filed the underlying malpractice action against their former legal counsel, the law firm of Orgain, Bell & Tucker, and two of its attorneys, Gilbert I. Low and Hollis Horton (collectively referred to as Appellees or OB & T or Defendants).

This is an appeal from a summary judgment granted by the 136th Judicial District Court of Jefferson County, Texas, in this legal malpractice case. Appellants initiated their suit claiming that appellees negligently committed malpractice and for violations of the Texas Deceptive Trade Practices Act (DTPA).

Appellants filed their lawsuit against appellees on April 27, 1990. Appellees, at an appropriate time, filed their Motion for Summary Judgment on the grounds that appellants' claims were barred by the statute of limitations and that its DTPA claim was brought in bad faith or for the purpose of harassment. The trial court granted OB & T's motion on both grounds and awarded to appellees attorney's fees incurred in the defense of the DTPA claim, both at the trial court and the appellate court levels. Appellants bring this appeal from the trial court's judgment.

Factually, in May of 1984, a truck owned by Appellant, Allied Van Lines, collided with a car, resulting in the death of the man and woman who were in the car. Appellant Allied Van Lines was insured by Appellant Transport Indemnity Company and Appellant Transport Insurance Company.

The underlying action was filed April 27, 1990, contending that appellees were negligent in their legal representation of appellants in connection with the settlement of a wrongful death suit threatened by Paula Trippel in 1984. Appellant, Transport, retained the legal services of appellees in a settlement of Paula Trippel's threatened lawsuit. On June 19, 1984, approximately one month following the date of the truck-automobile collision, Trippel's claim was settled for $250,000.00 by appellants.

Prior to the settlement the County Court of Tyler County, Texas, IN THE MATTER OF THE GUARDIANSHIP OF PAULA MARIE TRIPPEL, cause no. 5765, authorized Troy Caldwell, "to compromise, settle, release and indemnify John Anthony Patillo, Allied Van Lines, Texas Storage Company, and Broderick Moving & Storage Company, Inc., for the potential claims of Paula Marie Trippel, a minor, arising out of the deaths of Judith Gladys Louise McMillan and Marvin Kervin, which occurred on or about May 18, 1984, due to an automobile/truck accident on Highway 69, approximately one and a half miles north of Colmesneil, Tyler County, Texas." It appears that approximately four years after the settlement, Trippel, no longer a minor, filed suit against appellants seeking to overturn the June 19, 1984 settlement, contending that such settlement was too low.

According to appellants' brief, in January 1988, Trippel filed her suit against Transport, alleging that her settlement was procured in bad faith and by coercion and fraud, and that such settlement was defective because it was not approved by an attorney ad litem. Transport hired an attorney to defend the Trippel action and was advised that Trippel had no standing to assert the wrongful death claim which was previously settled, due to the fact that she was not the natural or legally adopted child of the persons on whose death her claim was based.

Appellants contend that the act which brought about appellants' discovery of malpractice occurred in 1990 when appellants' new attorney discovered appellees' internal memorandum which set forth that appellees knew of potential problems with Trippel's standing prior to the time settlement

was made. Appellants contend that despite appellees' knowledge of the standing question, appellees never discussed same with Transport prior to the June 19, 1984 settlement. Appellants then filed the underlying malpractice action, contending that appellees were negligent in handling the settlement of Trippel's claim, and in failing to have an attorney ad litem appointed in connection therewith. Transport also alleged that appellees had violated the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"). Appellants subsequently dropped their DTPA claim in the filing of Plaintiffs' Second Amended Petition. Prior to the time appellants dropped their DTPA claim, appellees filed their counter claim complaining that the DTPA claim was groundless and brought in bad faith. Appellants maintained their DTPA claim against appellees for approximately one and one-half years before dropping same.

The DTPA expressly excludes business consumers that have assets of $25,000,-000.00 or more from maintaining such an action. TEX.BUS. & COM.CODE ANN. § 17.-45(4) (Vernon 1987). Appellants, obviously excluded as consumers by the DTPA, continued to maintain their DTPA claim for the period of time stated. Our trial court awarded appellees attorney's fees in the amount of $8,090.00 and expenses in the amount of $1,241.51 for defense of the DTPA action at the trial court level and further awarded the sum of $10,000.00 in the event of appeal to the Court of Appeals and $10,000.00 in the event of appeal to the Texas Supreme Court.

■ Appellants bring three points of error which we shall address in the order presented. Point of error one contends that the trial court erred in granting OB & T a summary judgment on its statute of limitations defense.

In addressing this point of error we must consider whether or not the summary judgment proof presented by OB & T, established as a matter of law that there was no genuine issue of fact as to any essential element of its defenses or counterclaim. Obviously, this correctly places the burden of proof on appellees.

Appellants properly set forth the rules governing this Court's review:

1. OB & T has the burden of showing that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law;

2. In determining whether or not there was a disputed material fact issue which precluded summary judgment, evidence favorable to appellant will be taken as true; and

3. Every reasonable inference must be indulged in appellants' favor and any doubts resolved in their favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985).

At trial level all parties agreed that attorney malpractice actions are governed by a two year statute of limitations. Both appellants and appellees agree that this two year period began to run when Transport discovered, or in the exercise of reasonable diligence should have discovered, the elements of its cause of action for negligence against OB & T. In this regard both appellants and appellees cite the case of *Willis v. Maverick*, 760 S.W.2d 642 (Tex. 1988). Neither appellants nor appellees cite the more recent cases of *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991) and *Smith v. McKinney*, 792 S.W.2d 740 (Tex.App.—Houston [14th Dist.] 1990 writ denied).

■ *Hughes* sets forth the rules on statute of limitations as same applies to legal malpractice cases as follows: "A cause of action for legal malpractice accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action." 821 S.W.2d at 156. In order for our trial court to hold as a matter of law that appellants discovered or should have discovered the act or acts of the alleged legal malpractice, it was compelling that OB & T conclusively establish the date on which discovery occurred, or in the exercise of reasonable diligence should have occurred on the part of appellants.

Seemingly, appellants take the position that a litigant's knowledge under the discovery rule, of itself, defies matter of law proof. In this regard appellants cite several non-Texas cases in support of their position. Appellants in their amended brief admit that their position is not clearly supported by Texas case law asserting as possible explanation that Texas did not adopt the discovery rule in legal malpractice cases until 1988.

In response to appellants' rather blanket assertion that the accrual of statute of limitations questions are always fact issues, appellee cites the case of *Arabian Shield Development Co. v. Hunt*, 808 S.W.2d 577 (Tex.App.—Dallas 1991, writ denied). In *Hunt* the court directly addressed the propriety of a summary judgment granted on the basis of limitations in a case involving the discovery rule. The court held that "[i]n the context of the discovery rule, the injury is complete when the harm is done, and the victim knows (or should know) the cause in fact of the harm." *Id.* at 583. The *Hunt* court further stated that the "accrual of the cause of action does not await the Plaintiff's recognition that he has grounds for a lawsuit." *Id.*

The Dallas court cited with approval the Fifth Circuit's decision in the case of *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363 (5th Cir.1984). The Plaintiff in *Timberlake* had developed problems from the use of a Dalkon Shield I.U.D. in March 1978. In April 1978 the Plaintiff underwent a hysterectomy at which time her doctor informed her that the I.U.D. had caused the illness. Three years later, in April of 1981, while viewing a television program concerning the Dalkon Shield, Plaintiff realized that the Defendant may have acted wrongfully in the manufacture and sale of the I.U.D. Plaintiff then filed her lawsuit alleging various theories of liability. The Fifth Circuit in *Timberlake*, construing the two year statute of limitations, ruled that the Plaintiff's cause of action accrued in April 1978. The Dallas court in construing *Timberlake* noted that it was in April 1978 that Plaintiff learned that she had been injured and that the I.U.D. caused her injury.

When our appellees presented their Motion for Summary Judgment, appellees attached to their motion as Exhibit A, a File Note Sheet dated January 8, 1988. This File Note Sheet is a copy of a page out of Transport's claim file. It is apparent that Exhibit A was prepared by one John Mekus in response to litigation initiated by Paula Trippel upon obtaining majority. We believe it crucial to our decision that we quote a portion of that File Note Sheet:

The $250,000.00 settlement appears reasonable under the circumstances. There *was* even a question whether Paula Trippel was the legally adopted child of the decedents. If she *was* not, she would have no standing under the Texas Wrongful Death Statute ... (emphasis added)

In Plaintiffs' Second Amended Petition, appellants pleaded that, "Plaintiffs did not learn of and had no reason to discover these developments until after April 1988." We, like Shakespeare, are taken "aback" by such an allegation. In light of the January 8, 1988 statement contained on the File Note Sheet, we believe, as did the trial court, that appellants' own file reveals as a matter of law, that appellants knew by January 8, 1988, that there had been a question about the minor's legitimacy and her standing under the Wrongful Death Statute. We cannot imagine more convincing evidence that appellants knew the nature of their possible injury by January 8, 1988, more than two years prior to the filing of appellants' present lawsuit in April 1990. Should this Court desire to stretch a point, which we do, the word "was" as underlined twice in the above quoted portion of the File Note Sheet, is glaringly revealing. The quoted note speaks in past tense which obviously relates back to June 19, 1984, when the $250,000.00 settlement was made. We believe a fair reading of Mr. Mekus' statement would be, that at the time the $250,000.00 settlement was made, Transport was then aware that, "There was even a question whether Paula Trippel was the legally adopted child of the decedents."

We agree with appellees that appellants, by the very nature of their response to OB & T's Motion For Summary Judgment and

by their contention, have attempted to change the relevant question from when appellants knew of the facts giving rise to their claim, to a question of when OB & T knew of these facts. Appellants are attempting to persuade this Court that relevant focus should be upon a time when appellants learned that OB & T knew there was a question as to the parentage of Trippel prior to the settlement. We reject such contention with full understanding as to why appellants cite no Texas cases in support of their position.

Appellants expend considerable effort in listing various "inferences" that could have been drawn by the trial court. The trial court's judgment does not state a specific ground upon which Defendants' Motion For Summary Judgment was granted, therefore, the judgment must be affirmed if any of appellees' grounds are meritorious. *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Arabian Shield, supra,* 808 S.W.2d at 579. Despite all of appellants' suggested inferences, the January 8, 1988 memorandum is clear as a matter of law that appellants had notice of Trippel's legitimacy question. It matters not when appellants knew that OB & T knew of a legitimacy question regarding Trippel. We overrule appellants' point of error one.

Appellants' point of error two contends that the trial court erred in granting OB & T a summary judgment on its defense that the use of a temporary guardian in the settlement was correct as a matter of law.

The trial court's judgment does not state any specific ground upon which OB & T's Motion for Summary Judgment was granted. Having found that the trial court's granting of the summary judgment which determined that appellants' claim was time barred, we believe it redundant to address appellants' point of error two. The trial court's summary judgment must be affirmed if any of appellees' grounds are meritorious. *McCrea* at 757; *Arabian Shield, supra* at 579. Point of error two is overruled.

■ Point of error three contends that the trial court erred in summarily holding that Transport's DTPA claim was brought in bad faith or for the purpose of harassment.

When appellants initially filed their lawsuit against OB & T, appellants alleged not only negligence, but also violations of the DTPA. For one to seek benefit of the DTPA one must qualify as a "consumer". Tex.Bus. & Com.Code Ann. § 17.45 (Vernon 1987). The DTPA expressly excludes certain businesses as consumers where the assets of such business is equivalent to $25,000,000.00 or where such business is owned or controlled by a corporation or entity with assets of $25,000,000.00 or more. Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). Our appellants admitted in response to Defendants' Request for Admissions that all three Plaintiffs had assets of $25,000,000.00 or were owned or controlled by a corporation or entity with assets of $25,000,000.00. We believe that appellants' admissions effectively bar appellants from maintaining an action under the DTPA and speak of bad faith and harassment.

Despite these facts and admissions appellants filed and maintained their action for over one and one-half years. Section 17.-50(c) of the DTPA states that, "On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the Defendant reasonable and necessary attorneys' fees and court costs." This is a determination to be made by the court. *See Donwerth v. Preston II Chrysler–Dodge,* 775 S.W.2d 634 (Tex.1989). Appellants had acknowledged that they did not qualify as consumers under the DTPA, therefore we perceive the only issue for the trial court to determine was whether or not their DTPA action against appellees was brought in bad faith. For a DTPA action to be groundless it must have no basis in law or fact and is not warranted by a good faith argument for the extension, modification, or reversal of existing law, *Id.* at 637. Appellants contend that the trial court did not receive any evidence regarding the existence of bad faith or an intent to harass. Our trial court's judgment recites that the

court finds the action was groundless and brought in bad faith. In November 1990, appellants' Admissions clearly showed a lack of legal basis for bringing their DTPA action against appellees. In spite of these Admissions, appellants continued to maintain their action against appellees for one and one-half years. It certainly is not difficult to conclude under such circumstances that appellants' action by, under, and through the DTPA was pursued in bad faith. Our Texas Supreme Court has defined bad faith under negotiable instruments law as including acting in "willful disregard of and refusal to learn" available facts. *See Citizens Bridge Co. v. Guerra,* 152 Tex. 361, 258 S.W.2d 64, 69–70 (1953). It does not appear that it was a failure on the part of our appellants to learn available facts, but rather that appellants knew the available facts, disregarded same, filed their action and continued to maintain same even after admitting disqualification under the DTPA. We believe appellants' actions speak not only of bad faith and harassment, but may also evidence malice.

We find no error in the trial court's award of attorneys' fees both at trial level and at the respective appellate levels. Furthermore we find no error in the trial court's award of expenses as set forth in its judgment and order. We overrule appellants' point of error three and affirm the trial court's judgment.

AFFIRMED.