Diana **SCHUTZE** and Cheryl Watts

v.

Don **SPRINGMEYER** and
Victor Drakulich.

No. CIV.A. G–97–484.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 18, 1998.

**768**

Ronald L. White, Brown Sims Wise & White, Houston, TX, mediator.

Mark Wesley Collmer, McDowell Collmer, Houston, TX, Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, Lannis W. Temple, Austin, TX, for Diana Schutze, Cheryl Watts.

George W. "Billy" Shepherd, III, John D. Vogel, Cruse Scott Henderson & Allen, Houston, TX, for Don Springmeyer, Kevin B. Finkel, Johnson Finkel and DeLuca, Houston, TX, for Victor Drakulich.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

In this action, Plaintiffs Diana Schutze and Cheryl Watts brings claims of legal malpractice against Defendants Don Springmeyer and Victor Drakulich. Now before the Court is Defendants' Motion for Summary Judgment, filed May 29, 1998. For the reasons stated below, the Motion is **GRANTED.**

### I. FACTUAL BACKGROUND

Defendants in this action, Springmeyer and Drakulich, were retained by the Plaintiffs in August of 1992 [1] to represent them in products liability litigation against The Methodist Hospital ("Methodist") for personal injuries allegedly caused by defective temporomandibular joint ("TMJ") Proplast implants. Methodist had entered into a joint enterprise with Vitek, Inc. to design, manufacture, market, and sell the allegedly defective implants.

Plaintiff Schutze received her TMJ implants in June of 1986. They were inserted by Dr. Jerry Black. Soon thereafter, Schutze began to experience problems with her implants, and the implants were removed by Schutze's doctors in November of 1988. According to Schutze's deposition in this case, her doctor informed her before she had her implants removed that the serious problems she was experiencing were caused by her TMJ implants. She also knew that the problems caused by the implants were potentially fatal. Schutze filed a lawsuit against

---

1. Viewed in the light most favorable to Plaintiffs.

her dentists in 1992 alleging malpractice in connection with the TMJ implant surgery. That case was dismissed as barred by the two-year statute of limitations for malpractice actions.

Plaintiff Watts had her TMJ Proplast implants inserted in October of 1985. Watts also experienced pain and other problems with her implants, and had them removed in January of 1987. According to Watts's deposition, her doctor informed her prior to removing the implants that her body was rejecting the implants, that the problems she was having were associated with the implants, and that they needed to be removed because she was experiencing problems.

In the summer of 1992, Plaintiffs consulted a different attorney, Chris Wilshire, to sue Methodist as a result of the injuries they sustained from their implants. After reviewing both cases, Mr. Wilshire informed Plaintiffs that he would not represent them because their claims were most likely barred by the Texas two-year statute of limitations on products liability cases. Shortly thereafter, Plaintiffs obtained the name of Defendant Springmeyer in Nevada to represent them in a suit against Methodist in Nevada, which has a longer statute of limitations than Texas.

Springmeyer, with Drakulich, agreed to represent Plaintiffs. Shortly after Defendants were retained, however, the federal district court in Nevada, in a similar case against Methodist in which Springmeyer represented a class of TMJ plaintiffs, granted Methodist's Motion to Dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2). Defendants allege that they then advised Plaintiffs that, if they wanted to sue Methodist, they would have to work through Texas counsel in Texas. Plaintiffs dispute that Defendants informed them of this, and allege that Defendants negligently failed to follow up on their claims in Texas. Defendants did file suit on Plaintiffs' behalf against DuPont; however, DuPont ultimately prevailed on all of the TMJ cases filed against it in Nevada on a bulk supplier defense. Plaintiffs now bring this action for legal malpractice, alleging that Defendants were negligent in letting their claims lapse by not properly investigating their claim and not filing the action in other jurisdictions which have longer statutes of limitations.[2]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by-pointing out to the Court that there is an absence of proof on any essential element of the nonmovant's case. *Id.,* 477 U.S. at 325, 106 S.Ct. at 2554. Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours and Co.,* 58 F.3d 193, 195 (5th Cir.1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED. R. CIV. P. 56(e)).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

**2.** These are the allegations of the First Amended Complaint, filed July 28, 1998.

summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## III. ANALYSIS

### A. *Statute of Limitations Defense*

Defendants' first summary judgment argument is that Plaintiffs cannot succeed on their legal malpractice claim because they cannot prove that their underlying claim against Methodist Hospital would have been successful. Specifically, Defendants argue that Plaintiffs' claims against Methodist were barred by the statute of limitations long before Plaintiffs retained Defendants to represent them.

 In a legal malpractice action, the plaintiff must prove a "suit within a suit"; that is, the plaintiff must demonstrate that she would have prevailed in the underlying action but for her attorney's negligence. *See Mackie v. McKenzie,* 900 S.W.2d 445, 449 (Tex.App.—Texarkana 1995, writ denied). Summary judgment is proper if the allegedly offending attorney can show that his failure to act did not cause the client any damages. *See Schlager v. Clements,* 939 S.W.2d 183, 187 (Tex.App.—Hous. [14th Dist.] 1996, writ denied).

Defendants argue that Plaintiff Watts's cause of action was triggered in January of 1987, and that Schutze's cause of action was triggered in November of 1988, the respective dates that each Plaintiff had her implants removed and was informed by her doctor that her health problems were caused by the implants. Because Plaintiffs did not retain Defendants until August of 1992, and because the statute of limitations for products liability actions in Texas is two years, Defendants argue that Plaintiffs cannot show that they would have prevailed in the underlying litigation against Methodist but for Defendants' negligence because the limitations period for both Plaintiffs had expired. In Response, Plaintiffs argue that their causes of action did not trigger until they had actual knowledge that the TMJ implants were defective, or in the Plaintiffs' words, knowledge of the "cause in fact" of their injuries.

 The question of when a cause of action accrues for limitations purposes is a question of law for the court. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Stroud v. VBFSB Holding Corp.,* 917 S.W.2d 75, 80 (Tex.App.—San Antonio 1996, writ denied). Plaintiffs argue that the discovery rule applies. Generally, under the discovery rule, the statute of limitations on a plaintiff's cause of action is tolled until the plaintiff discovers or should have discovered the nature of her injuries. *See Murphy v. Campbell,* 964 S.W.2d 265, 271 (Tex.1997); *Houston Endowment, Inc. v. Atlantic Richfield Co.,* 972 S.W.2d 156, 158 (Tex.App.— Hous. [14th Dist.] 1998, n.w.h.). Defendants, as the summary judgment movants, carry the burden of proving when the cause of action accrued and negating the discovery rule by showing as a matter of law that there is no genuine issue of fact regarding when the Plaintiffs discovered or should have discovered the nature of their injuries. *See Houston Endowment,* 972 S.W.2d at 158.

 In this case, the Court agrees with Defendants, and finds that each Plaintiff's statute of limitations was triggered at the time that she was told by her doctor that her injuries were caused by her TMJ implants. Plaintiffs' argument is essentially that they did not know the nature of their injuries or the cause in fact until they discovered that the TMJ implants were defective; that is, they argue that their cause of action did not arise until Methodist Hospital's alleged wrongdoing was discovered. Such arguments have been advanced before, and squarely rejected by the courts. *See, e.g., Timberlake v. A.H. Robins Co.,* 727 F.2d 1363 (5th Cir.1984); *Bayou Bend Towers Council of Co–Owners v. Manhattan Constr. Co.,* 866 S.W.2d 740, 743 (Tex.App.—Hous. [14th Dist.] 1993, writ denied) (discovery of the injury, rather than all of the elements of a cause of action, triggers the limitations period).

In support of their argument, Plaintiffs cite *Hays v. Hall,* 488 S.W.2d 412 (Tex.1972) and *Grady v. Faykus,* 530 S.W.2d 151 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). In each of these cases, the plaintiff had no knowledge whatsoever about the cause of his or her injury. Thus, the statutory period was held to have commenced upon the plaintiff's discovery of the injury or its cause. Neither of these cases implies or even mentions what Plaintiffs advance; namely, that the statutory period should be tolled until the plaintiff learns that the defendant's conduct may have been wrongful. *See Timberlake,* 727 F.2d at 1365. On the contrary, the cases explicitly hold that "the Statute of Limitations commences to run from *discovery of the injury.*" *Hays,* 488 S.W.2d at 414. Plaintiffs here cannot honestly state that they did not know about their injuries or that the implants caused their injuries at the time that they had their implants removed. Both Plaintiffs were informed that the reason for the implant removal surgery was that the implants were causing their health problems.

Plaintiffs also advance *Woodruff v. A.H. Robins Co.,* 742 F.2d 228 (5th Cir.1984) and *Mann v. A.H. Robins Co.,* 741 F.2d 79 (5th Cir.1984), two cases involving injuries caused by a Dalkon Shield IUD, in support of their argument. In *Woodruff,* the plaintiff did not discover that there was a possible causal connection between her injuries and the IUD until her husband read an article about the possible connection. Similarly, in *Mann,* the Fifth Circuit remanded to the district court with instructions to determine when the plaintiff knew or should have known that the IUD caused her injuries.

Plaintiffs differentiate the holdings of *Woodruff* and *Mann* from the holding in *Timberlake v. A.H. Robins Co.,* 727 F.2d 1363 (5th Cir.1984), and seem to imply either that *Timberlake* has been overruled or that *Woodruff* and *Mann* are more applicable. In *Timberlake,* the Fifth Circuit held that the plaintiff's claims were barred by limitations where she "knew of her injury and that it was, in her doctor's opinion, caused by the Dalkon Shield at the time the hysterectomy was performed, which was more than two years prior to the institution of this suit."

*Id.* 727 F.2d at 1365. The Fifth Circuit's holding in *Timberlake* is distinguishable from *Woodruff* and *Mann,* in that Timberlake's doctor told her that her problems had been caused by the IUD.

Timberlake argued that the court should apply a three-pronged test to determine when the statute of limitations is triggered, determining when the plaintiff learned of the injury, the cause in fact, and the legal cause. The court, however, explicitly rejected the argument that the plaintiff must have knowledge of the legal cause of her injuries; that is, that the plaintiff must have knowledge of the defendant's wrongdoing before the statutory period begins to run. Instead, the Fifth Circuit affirmed that Texas law requires only that the plaintiff have knowledge of her injury and of its cause in fact. *Id.* 727 F.2d at 1365.

Despite Plaintiffs' apparent attempt to discredit *Timberlake* because it was decided prior to *Mann* and *Woodruff,* it is clear that *Timberlake* was not overruled or even questioned by those cases; in fact, the Fifth Circuit subsequently relied on *Timberlake* in *Longoria v. City of Bay City, Tex.,* 779 F.2d 1136, 1138 (5th Cir.1986), two years after *Mann* and *Woodruff.* The cases are plainly distinguishable on their facts. In neither *Mann* nor *Woodruff* did the plaintiff have knowledge of the cause in fact of her injuries until later. In *Timberlake,* on the other hand, just as in the case at bar, the plaintiff had knowledge of her injury *and* of the cause in fact when her doctor informed her that her problems were related to the product. In fact, Plaintiffs themselves recognize the factual distinctions between *Timberlake* and *Mann* and *Woodruff,* stating that in *Timberlake,* "the plaintiff's doctor advised that her problems had been *caused* by the IUD" and that in *Coody v. A.H. Robins Co.,* 696 S.W.2d 154 (Tex.App.—San Antonio 1985, writ dism'd by agr.), the plaintiff "was advised by her doctor that she was suffering from a pelvic inflammatory disease *caused* by her use of the IUD." (emphasis in original).

It is clear that this case is factually almost identical to the facts in *Timberlake.* Plaintiffs in this case were similarly informed *at the time of their injuries,* and at the time

that their implants were removed, that their problems were *caused* by the TMJ implants. That they did not know the implants were defective is irrelevant. Given the summary judgment evidence, Plaintiffs' argument that they did not know of the cause in fact of their injuries at the time the implants were removed is blatantly false; they may not have known that the implants were defective (legal cause), but they certainly knew that the implants caused their injuries (cause in fact). Plaintiffs here make the same misguided argument as did the plaintiff in *Timberlake;* the Fifth Circuit squarely rejected the argument then, and this Court squarely rejects it now. The Court finds accordingly that the Plaintiffs' causes of action began to run at the time that they had their TMJ implants removed by their doctors: January of 1987 for Watts, and November of 1988 for Schutze. Therefore, their causes of action were already barred by the time they retained Defendants' services in August of 1992, and they can show no damages in this lawsuit for any alleged malpractice by Defendants.

### B. *Fraudulent Concealment*

■ Plaintiffs argue as an affirmative defense to the running of the statute of limitations that fraudulent concealment should toll their causes of action against Methodist. The Fifth Circuit laid out the requirements for applying fraudulent concealment to toll the statute of limitations in *Timberlake. See Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.,* 934 F.Supp. 796, 808 (S.D.Tex. 1996). Fraudulent concealment applies when the allegedly concealing party "is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the one to whom it belongs." *Timberlake,* 727 F.2d at 1366 (quoting *Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex.1974)). "A successful assertion of fraudulent concealment requires the plaintiff to prove that the defendant had *actual knowledge* of the facts allegedly concealed, and a fixed purpose to conceal the wrong." *Id.* (emphasis added). Fraudulent concealment is an affirmative defense to a statute of limitations bar; as such, Plaintiffs bear the summary judgment burden. *Id.*

■ Fraudulent concealment clearly does not apply in this case. Plaintiffs' fraudulent concealment argument is based solely on the existence of a letter written in 1984 by Dr. Kent, who consulted for Vitek, to Dr. Homsy at Vitek. The letter merely informs Dr. Homsy that one of Dr. Kent's patients experienced problems with the implants. Though the letter does express concern over the problem, it does not represent definitive date or that studies existed to confirm that the implants were defective. The letter in no way suggests that either party had *actual knowledge* that the implants were defective or would cause widespread problems. The fact that Dr. Homsy received one letter from Dr. Kent informing him that one of Dr. Kent's patients had experienced problems with the implants is simply insufficient as a matter of law to show that Methodist had "actual knowledge of the facts allegedly concealed, and a fixed purpose to conceal the wrong." Accordingly, the Plaintiffs' claim of fraudulent concealment is completely groundless.

### C. *Alternative Forums*

Finally, Plaintiffs allege that, even assuming that a court sitting in Texas would have barred their claims, Defendants should have filed Plaintiffs' case against Methodist "in any one of 25 states in federal court which have longer statutes of limitation than Texas." In support of their argument that another jurisdiction would have allowed their claims, Plaintiffs merely submit a list of the 25 states that have longer limitations periods than Texas.

As Defendants point out, however, Plaintiffs carry the ultimate burden of proving their causes of action. To show damages, Plaintiffs will have to prove that Defendants could have successfully filed their claims in a jurisdiction outside of Texas. On summary judgment, therefore, Plaintiffs bear the burden of coming forth with affirmative evidence that their claims would have been successful in another jurisdiction. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553; *Wise,* 58 F.3d at 195.

Submitting a list of states with longer limitations periods than Texas falls woefully short of satisfying the Plaintiffs' summary judgment burden of proving that their claims would have been successful elsewhere. First, Plaintiffs have not even addressed the obstacle that would face Texas plaintiffs trying to bring an action outside of Texas against a Texas defendant for injuries sustained in Texas. Second, the remedy Plaintiffs now advocate to solve their limitations problem has been attempted several times by TMJ plaintiffs against Methodist Hospital in various other states, including California, Nevada, Connecticut, Pennsylvania, Oklahoma, and Tennessee. *Each time,* Methodist was dismissed for lack of personal jurisdiction. *See, e.g., Bensmiller v. E.I. Dupont De Nemours & Co.,* 47 F.3d 79, 85 (2d Cir.1995). Even if Plaintiffs had attempted to address the obstacles of venue and jurisdiction, the Court is convinced that such obstacles would have been insurmountable, and therefore that an attempt to file these claims in another state would have been unsuccessful, and an abuse of the legal system.

Moreover, even had Plaintiffs been able to clear the formidable venue and jurisdictional hurdles, it is not at all clear that their claims would not still have been barred by Texas' two-year statute of limitations under a borrowing statute. *See, e.g.,* NEV. REV. STAT. § 11.020. Again, Plaintiffs have presented no evidence whatsoever on this point to satisfy their summary judgment burden of showing that their claims would have been successful in another forum state. In fact, Defendants have submitted evidence that six of the eight states on Plaintiffs' list where their claims might have been timely [3] do have such borrowing statutes.

Of the two states where Plaintiffs' claims might have been timely and which do not have borrowing statutes, Minnesota and Nebraska, venue would clearly be improper as there is no factual connection whatsoever with those states. Moreover, as previously stated, it is virtually certain that Methodist is not subject to personal jurisdiction in those states. But Plaintiffs' argument is even more fatally flawed. Nowhere do Plaintiffs even attempt to address the dubiousness of their argument that Defendants had a duty to investigate other states as a forum for their claims, especially where the facts show so clearly that no forum other than Texas would have been proper. For Defendants to have attempted to file Plaintiffs' claims in another state simply for more favorable limitations periods would have been a clear case of egregious forum-shopping. To imply that Defendants had a duty to improperly forum shop is absolutely ludicrous.

Plaintiffs' alternative forum argument is nothing more than a last-ditch attempt to show that their expired causes of action might have been resurrected. There is no legal excuse for the fact that Plaintiffs allowed their causes of action against Methodist Hospital to expire. Because the expiration occurred long before they retained Defendants, Plaintiffs cannot prove an essential element of their malpractice claims: that Defendants' actions caused them harm.

## IV. CONCLUSION

Accordingly, for the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date. The parties are also **ORDERED** to file nothing further in this matter, including motions to reconsider and the like, unless supported by compelling new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order Granting Summary Judgment entered

---

3. As Defendants point out, seventeen of the twenty-five states on Plaintiffs' list have a three-year statute of limitations. However, Plaintiffs retained Defendants more than three years after their causes of action were triggered. Therefore, their claims would be barred in those seventeen states.

this date, Defendants' Motion for Summary Judgment is hereby **GRANTED** and all claims in this action are **DISMISSED WITH PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**