**DERRICK MANUFACTURING CORP., Plaintiff,**

v.

**SOUTHWESTERN WIRE CLOTH, INC., et al., Defendants.**

**Civil Action No. H–94–0135.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 2, 1996.

David Lee Burgert, Porter & Hedges, Houston, TX, for Derrick Manufacturing Corporation.

Daniel O. Goforth, Goforth Lewis Scott & Williams, Houston, TX, Lester L. Hewitt, Pravel Hewitt Kimball & Krieger, Houston, TX, for Southwestern Wire Cloth, Inc.

Daniel O. Goforth, Goforth Lewis Scott & Williams, Houston, TX, for Oilfield Screens, Robert E. Norman.

Richard Austin Schwartz, Schwartz Campbell & Oathout, Houston, TX, for Amoco Corporation.

## *MEMORANDUM AND ORDER*

ATLAS, District Judge.

Plaintiff Derrick Manufacturing Corporation ("Derrick") filed this lawsuit complaining, *inter alia*, of infringement of U.S. Patent No. 4,575,421 ("the '421 patent") and infringement of "Derrick" and other trademarks registered to Derrick. Defendants Southwestern Wire Cloth, Inc., Southwestern Wire Cloth Oilfield Screens, Inc. and Robert E. Norman (collectively "SWC") have filed four motions for partial summary judgment.

For the reasons given below, it is now **ORDERED** as follows:

- Defendants' **Motion for Partial Summary Judgment Based on Inequitable Conduct** [Doc. # 41] is **DENIED;**

- Defendants' **Motion for Partial Summary Judgment That Damage Awards for 'Trademark Related Claims' Incurred Prior to January 14, 1992 Are Barred by the Statute of Limitations** [Doc. # 39] is **DENIED IN PART AND GRANTED IN PART;**

- Defendants' **Motion for Partial Summary Judgment That All Damages for 'Trademark Related Claims' Incurred Prior to January 14, 1994 Are Barred By Laches** [Doc. # 44] is **DENIED;**

- Defendants' **Motion for Partial Summary Judgment That All Damages for Statutory Trademark Infringement of Derrick's Federally Registered Trademark Incurred Prior to January 14,**

1994 Are Barred by 15 U.S.C. § 1111 [Doc. # 40] is **DENIED**.

## I. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé*, 912 F.2d at 804 (*citing Reid v. State Farm Mutual Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of rehearing*, 70 F.3d 26 (1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any manner on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Insurance Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Douglass v. United Services Automobile Association*, 65 F.3d 452, 459 (5th Cir.), *rehearing en banc granted*, 70 F.3d 335 (1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th

Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass*, 65 F.3d at 459; *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (*citing Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (*citing Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## II. *INEQUITABLE CONDUCT*

In 1986, Derrick secured the '421 patent for its "Non–Clogging Wear–Reducing Screen Assembly for Vibrating Screening Machine," invented by James W. Derrick and Robert G. Derrick.[1] The screen assembly of the '421 patent was designed for use on a "linear motion shaker machine" to filter large volumes of drilling mud in the oil field industry. SWC argues that the patent is unenforceable due to Derrick's inequitable conduct. The Court has considered the Inequitable Conduct Motion, SWC's Supplement, Derrick's Opposition, SWC's Reply, Derrick's Surreply, SWC's Response to the Surreply, all exhibits, and the applicable authorities.

To be guilty of inequitable conduct, a patent applicant must have intended to deceive the Patent and Trademark Office ("PTO") by failing to disclose material information. Thus there are two elements that must be established in order to sustain the defense of inequitable conduct: materiality and intent. *Allied Colloids Inc. v. American Cyanamid Company*, 64 F.3d 1570, 1578 (Fed.Cir.1995); *Braun, Inc. v. Dynamics*

---

1. *See* Exhibit 1 ('421 patent) to Defendants' Motion for Partial Summary Judgment Based on Inequitable Conduct [Doc. # 41] (hereinafter "Inequitable Conduct Motion").

*Corp. of America,* 975 F.2d 815, 822 (Fed.Cir. 1992); *LaBounty Mfg. Inc. v. U.S. International Trade Commission,* 958 F.2d 1066, 1070 (Fed.Cir.1992). When a court determines that inequitable conduct occurred during prosecution of a patent application, the entire patent is thus rendered unenforceable. *Kingsdown Medical Consultants Ltd. v. Hollister, Inc.,* 863 F.2d 867, 877 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

 Intent and materiality are separate and essential components of inequitable conduct, and SWC must establish both of these elements by "clear and convincing evidence." *Allied Colloids,* 64 F.3d at 1578; *Braun,* 975 F.2d at 822.[2] Therefore, in order to prevail on this motion for summary judgment, SWC must establish that, with all inferences drawn in favor of Derrick, there is clear and convincing evidence of both materiality and intent. The Federal Circuit has stated that the courts should use caution in granting summary judgment on the issue of inequitable conduct. If the facts of materiality or intent are "reasonably disputed," the issue is not amenable to summary judgment. *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,* 984 F.2d 1182, 1190 (Fed.Cir. 1993); *Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1566 (Fed.Cir.1987). While "merely conclusory statements or completely insupportable, specious, or conflicting explanations or excuses" do not raise a genuine issue of fact, the courts are required to consider all circumstances, including those indicative of good faith. *Paragon Podiatry,* 984 F.2d at 1190.

The '421 patent involves a screen assembly consisting of a fine screen and a coarse screen firmly bonded to a perforated plate. The principal prior art relied upon by the Patent Examiner when evaluating the '421 patent application was: (1) U.S. Patent No. 4,033,865, assigned to Derrick ("the '865 patent"), which discloses a "sandwich screen" but does not use a perforated plate, and (2) U.S. Patent No. 2,723,032, assigned to Gisler ("the Gisler patent"), which discloses a combination of a fine screen and a coarse screen, and suggests in its text the use of a perforated plate.

SWC, in support of its inequitable conduct contentions, offers three exhibits that allegedly show material prior art that was not disclosed during the prosecution of the '421 patent in 1984–86. The first is a 1958 drawing[3] of a Derrick screen assembly which shows a single fine screen bonded to a perforated plate. The second is a promotional pamphlet[4] prepared by Derrick prior to 1969 which describes a Derrick practice of mounting fine screens on perforated plates. The third is a rough sketch[5] drawn by a SWC attorney during the deposition of James Derrick. The sketch shows a combination of a coarse screen and a fine screen bonded to a perforated plate. James Derrick testified during his deposition that this assembly was made and sold by Derrick prior to 1982.[6] SWC argues that this undisclosed prior art was more pertinent than the prior art before the PTO (*i.e.,* the Gisler and '865 patents) because it showed perforated plates bonded to one screen or, in some cases, two screens.

In its motion, SWC argues that intent is established because Figures 7 and 8 of the '421 patent are described in the patent appli-

---

**2.** The determinations of whether the materiality and intent elements are satisfied are questions of fact, which are reviewed under the clearly erroneous standard. *Baxter Healthcare Corp. v. Spectramed, Inc.,* 49 F.3d 1575, 1584 (Fed.Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 272, 133 L.Ed.2d 194 (1995); *Halliburton Co. v. Schlumberger Technology Corp.,* 925 F.2d 1435, 1439 (Fed.Cir. 1991). Inequitable conduct determinations are within the discretion of the district court, and the appeals court reviews the district court's conclusions as to inequitable conduct under an abuse of discretion standard. *Halliburton,* 925 F.2d at 1439; *Fox Industries v. Structural Preservation Systems,* 922 F.2d 801, 803 (Fed.Cir.1990); *Kingsdown Medical Consultants Ltd. v. Hollister*

*Inc.,* 863 F.2d 867, 876 (Fed.Cir.1988). The decision may not be upheld where the exercise of discretion rests on erroneous findings of facts or on a misunderstanding of the law. *LaBounty,* 958 F.2d at 1070; *Manville,* 917 F.2d at 551.

**3.** Exhibit 9 to Inequitable Conduct Motion.

**4.** Exhibit 15 to Inequitable Conduct Motion.

**5.** Exhibit 14 to Inequitable Conduct Motion.

**6.** Exhibit 10 to Inequitable Conduct Motion, at 68.

cation as embodiments of the present invention, but actually were Derrick prior art products that should have been disclosed. SWC also argues that the intent element of inequitable conduct is satisfied because the undisclosed prior art involved Derrick's *own* products. In other words, SWC argues that Derrick unquestionably knew of the existence of this allegedly material prior art, and so its failure to disclose the prior art was necessarily intentional.

Derrick argues in response that Figures 7 and 8 differ from the undisclosed designs because the two figures were intended to show the use of a perforated plate "firmly bonded" to a screen with an "adhesive like epoxy." [7] Derrick also claims that the failure to disclose was done in good faith and was, at most, simple negligence or erroneous judgment. Derrick states that its inventors disclosed the '865 patent, a sandwich screen assembly for the oil and gas industry, because it was the starting point from which the '421 invention developed. Derrick further states that the undisclosed designs were obsolete because they were designed for the paint and pharmaceutical industries, and that they did not work in the oil and gas industries.

In order to satisfy the intent element of inequitable conduct, SWC is required to establish by clear and convincing evidence that Derrick's conduct, viewed in light of all the evidence, indicates sufficient culpability to require a finding of intent to deceive. *Allied Colloids*, 64 F.3d at 1578; *Kingsdown*, 863 F.2d at 876. It is noted that, since materiality and intent are separate elements of inequitable conduct, intent may not be inferred solely from failure to present to the PTO material prior art of which the applicant

was aware. *Braun*, 975 F.2d at 822. The Federal Circuit has held that inequitable conduct is not established merely because a patent applicant "omit[s] telling the patent examiner information that the applicant in good faith believes is not material to patentability." *Allied Colloids*, 64 F.3d at 1578. Furthermore, the Federal Circuit recently has clarified that even "gross negligence" does not justify an inference of intent to deceive. *Halliburton*, 925 F.2d at 1442; *Kingsdown*, 863 F.2d at 876.

Derrick's explanations for the nondisclosure, namely, oversight in part and a belief that disclosure was unnecessary since the prior products (using different adhesives) did not work in the oil application for which the '421 invention was designed, are sufficient to defeat SWC's motion for partial summary judgment based on inequitable conduct. These explanations raise a material question of fact preventing SWC from meeting its burden to show by "clear and convincing" proof that Derrick intended to deceive the PTO while prosecuting its '421 patent application. Therefore, SWC's motion fails. *See Paragon Podiatry*, 984 F.2d at 1190; *Baker Oil Tools*, 828 F.2d at 1566.[8]

## III. STATUTES OF LIMITATIONS

SWC has moved this Court for partial summary judgment, arguing that under a two year statute of limitation Derrick "is barred from recovering damages for the claims sought in Paragraphs Twenty-two through Twenty-six of Plaintiff's First Amended Complaint which includes all Lanham Act claims and Unfair Competition claims (hereinafter referred to as 'Trademark Related Claims') which were incurred prior to January 14, 1992." [9] Derrick argues

7. Exhibit 1 to Derrick's Opposition to Defendant's Motion for Partial Summary Judgment on the Equitable Defense of Inequitable Conduct (hereinafter "Inequitable Conduct Opposition") (Affidavit of James Derrick), at 8. Although the adhesive used in the '421 invention is not explicit in the diagrams (Figures 7 & 8), Derrick argues that this was an oversight. Exhibit 2 to Inequitable Conduct Opposition (Affidavit of Robert Derrick), at 4–5. Derrick further argues that this oversight is immaterial in any event since the text discussing Figures 7 & 8 makes reference to Figures 1–4, which explicitly name the adhesive

means. Exhibit 1 to Inequitable Conduct Motion ('421 Patent), at col. 4, 1. 38–58.

8. Since SWC has not carried its burden of establishing intent by clear and convincing evidence, it is not necessary to reach the issue of materiality. However, at first blush it appears that the Derrick explanations satisfy the non-movant's burden on this issue also.

9. SWC's Motion for Partial Summary Judgment That Damage Awards For 'Trademark Related Claims' Incurred Prior To January 14, 1992 Are

in response that the appropriate limitations period is four years (based on the fraud limitations period); that the discovery rule and the continuing tort doctrine apply, and therefore the limitations period has not yet begun to run; and that SWC has not met its burden of establishing that there is no genuine question of material fact regarding the limitations period.[10] The Court has considered the Limitations Motion, SWC's Supplement, Derrick's Opposition, SWC's Reply, Derrick's Surreply, SWC's Response to the Surreply, all exhibits and the applicable authorities.

■ In the section of the First Amended Complaint to which SWC makes reference in the Limitations Motion, Derrick asserted the following claims:

¶ 22: "[K]nowing and willful infringement of Derrick's trademarks and federal trademark registration and counterfeiting" as prohibited by 15 U.S.C. § 1114.

¶ 23: "Defendants' use of the name and mark 'Derrick' and its other marks, such as 'PWP,' 'DX' and 'HP,' indicates falsely to the trade that Defendants, their representatives, or their products are in some way connected with, sponsored by or related to Derrick and the products which Derrick manufactures and distributes,"

constituting unfair competition and a violation of 15 U.S.C. § 1125(a).

¶ 24: "[A]dvertising and information" distributed in the marketplace by Defendants are "false or misleading representations" performed in "a malicious, fraudulent, deliberate, or willful fashion," constituting unfair competition and a violation of 15 U.S.C. § 1125(a).

¶ 25: Defendants' use of Derrick's name and marks removes from Derrick the ability to control the quality of its products, goodwill, and reputation, and allows SWC to receive the benefit of the goodwill built up by Derrick over many years, thereby unjustly enriching SWC at Derrick's expense, a type of injury for which there is no adequate remedy at law.

¶ 26: Defendants' manufacture and sale of products which infringe on Derrick's patents and trademarks constitute unfair competition under the common law of Texas.

Derrick's First Amended Complaint (Exhibit B to SWC's Supplement to Defendants' Motions for Summary Judgment Based Upon Applicable Statutes of Limitations [Doc. # 59] ), at ¶¶ 22–26. The claims under the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition will be addressed in turn.[11]

Barred By The Statute of Limitations [Doc. # 39] (hereinafter "Limitations Motion"), at 1.

10. Derrick's Opposition to Defendants' Motion for Partial Summary Judgment on the Basis of Statute of Limitations [Doc. # 69] (hereinafter "Limitations Opposition").

11. Paragraph 25 of the First Amended Complaint does not state an independent claim for relief and was not addressed as such by SWC in its summary judgment motion.

Paragraph 22 of the First Amended Complaint invokes Section 32(1) of the Lanham Act, 15 U.S.C.A. § 1114(1)· (West 1963 & Supp.1995). Section 32(1), like Section 43(a), primarily involves an inquiry as to whether a party's use of a mark is likely to confuse customers as to the source of a product. See Payless Shoesource, Inc. v. Reebok International Ltd., 998 F.2d 985, 988 (Fed.Cir.1993). Section 32(1) provides authority for injunctive relief before a violation has occurred. IA Jerome Gilson & Jeffrey M. Samuels, Trademark Protection and Practice, § 8.07[2] at 8–155–56 (1995). Section 43(a), on the other hand, prohibits a broader range of practices than

does Section 32. See Two Pesos, 505 U.S. at 767, 112 S.Ct. at 2757. Furthermore, Section 43(a) applies to unregistered marks, while recovery under Section 32 is only available based on registered marks. Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1010 (5th Cir.1975), cert. denied, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).· SWC does not assert any statute of limitations arguments concerning Derrick's claim under Section 32(1). Nor has the Court found any authority for applying a state statute of limitations to a Section 32(1)·claim. A leading treatise on trademark law states that although the practice of borrowing state law has been applied to a variety of federal claims, "no court in a reported decision has applied it to extinguish a trademark infringement claim brought under Section 32(1) of the Lanham Act." Gilson & Samuels, § 8.12[16]. at 8–326.1, 326.2 & nn. 383–84. Therefore, unless SWC submits probative supporting authority directly addressing Section 32(1) within ten days of the entry of this order, any summary judgment that is implicitly sought by SWC on this claim on the basis of the statute of limitations is denied.

■ Since the statute of limitations is an affirmative defense to a claim of trademark infringement, SWC bears the burden of proving that the statute applies. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex.1988). On this motion for partial summary judgment, therefore, SWC must show that, drawing all inferences in favor of Derrick, there is no genuine issue of material fact and that the statute of limitations bars Derrick's recovery under both the Lanham Act and common law unfair competition.

### Applicable Limitations Period For Section 43(a) of the Lanham Act

■ Section 43(a) of the Lanham Act provides for civil liability for any person who uses in commerce a word, name, or symbol which:

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C.A. § 1125(a)(1) (West 1982 & Supp. 1995). This section protects against misrepresentations or false statements made in connection with the advertising and marketing of goods or provision of services, misappropriation of the efforts of others, and confusion or likelihood of confusion as to source, sponsorship, or association of goods or services. Charles E. McKenney and George F.

Long, III, *Federal Unfair Competition: Lanham Act § 43(a)* § 2.04 (1995); *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 767, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); *id.* at 777–84, 112 S.Ct. at 2762–66 (Stevens, J., concurring).

■ The first step is to determine the applicable statute of limitations. The courts have typically applied state statutes of limitations to claims under Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a). 1A Jerome Gilson & Jeffrey M. Samuels, *Trademark Protection and Practice* (hereinafter "Gilson & Samuels"), § 8.12[16], at 8–326.1 (1995).

The general limitations period for torts in Texas is two years as provided by Tex.Civ. Prac. & Rem.Code § 16.003(a). SWC argues that this two year limitations period, which applies to actions for injury to personal property, should apply here, because "[w]hile neither the Fifth Circuit nor Texas courts have ruled directly on the appropriate statute of limitations for Lanham Act claims," it is the "most appropriate" Texas limitations statute. Limitations Motion, at 3–4. SWC further argues that state limitations periods for actions for injury to personal property have been applied by other federal courts. Limitations Motion, at 4 (*citing Deuer Manufacturing, Inc. v. Kent Products, Inc.*, 17 U.S.P.Q.2d 1379, 1989 WL 297879 (E.D.Mich. 1989), *aff'd in part and vacated in part*, 907 F.2d 158 (Fed.Cir.1990); *Construction Technology, Inc. v. Lockformer Co.*, 704 F.Supp. 1212 (S.D.N.Y.1989)).[12]

The large majority of federal courts that have considered the limitations issue as to Section 43(a) claims have held that these claims are most comparable to fraud claims, and have applied the fraud limitations period.

---

**12.** SWC asserts in passing that Tex.Bus. & Com. Code § 16.26(c)(1), a two year limit on damages for infringement of a *state* registered trademark, provides added support for its argument that a two year limitations period is appropriate. Defendants' Reply in Support of Partial Summary Judgment that Damage Awards for "Trademark Related Claims" Incurred Prior to January 14, 1992 Are Barred by the Statute of Limitations [Doc. # 78], at 7. SWC argues that Section 16.26(c)(1) is "the most relevant law available in Texas to show that it is the intent under Texas law, as adopted by the legislature, that trademark infringement should have a two year statute of limitations and not otherwise." SWC's Response to Surreplies of Derrick [Doc. # 92], at 7. However, given Derrick's statement that its trademarks are not registered in Texas, *see* Derrick's Surreply in Opposition to Defendants' Motion for Partial Summary Judgment Based on the Statute of Limitations [Doc. # 84], at 4, the Texas statute is not relevant to the determination of the appropriate limitations period for its federally registered trademark.

*See, e.g., Gordon & Breach Science Publishers S.A. v. American Inst. of Physics,* 859 F.Supp. 1521, 1528–29 (S.D.N.Y.1994); *Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp.,* 868 F.Supp. 1414, 1420 (S.D.N.Y.1994); *Vitale v. Marlborough Gallery,* 32 U.S.P.Q.2d 1283, 1994 WL 654494 (S.D.N.Y.1994); *Mylan Lab., Inc. v. Pharmaceutical Basics, Inc.,* 808 F.Supp. 446, 453–54 & n. 8 (D.Md. 1992), *rev'd on other grounds,* 7 F.3d 1130 (4th Cir.1993), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994); *Johannsen v. Brown,* 797 F.Supp. 835, 839–40 (D.Ore.1992); *PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.,* 578 F.Supp. 196, 199 (S.D.N.Y.1984).

Furthermore, SWC's argument that the two year period should apply relies heavily on *Construction Technology, Inc. v. Lockformer Co.,* 704 F.Supp. 1212 (S.D.N.Y.1989), whose reasoning has been rejected by a later case from the Southern District of New York. *Gordon & Breach,* 859 F.Supp. at 1529. The *Gordon & Breach* Court explained that "[t]he courts have been more receptive to the reasoning of [*PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.,* 578 F.Supp. 196, 199–200 (S.D.N.Y.1984), which held that the limitations period for fraud applied to Section 1125(a) cases,] than to that of *Construction Technology.* We have found no cases following *Construction Technology* . . .". *Id.*

Therefore, this Court holds that the fraud limitations period applies for Derrick's Section 43(a) claim. In Texas, the limitations period for fraud is four years. *See* Tex.Civ. Prac. & Rem.Code § 16.004.

The Court is aware that the Fifth Circuit has recently stated that a tort not expressly covered by a limitations provision nor expressly held by the Texas Supreme Court to be governed by a different provision is presumptively a "trespass" for limitations purposes, and thus that a two year limitations period applies. *Castillo v. First City Bancorporation of Texas,* 43 F.3d 953, 962 (5th Cir.1994) (holding that duress is a trespass claim rather than a fraud claim, and that a two year statute of limitations applies). This ruling, however, is not applicable to the Lanham Act case at bar. The Lanham Act creates statutory claims independent of Texas common law, and thus the premise of *Castillo, i.e.,* that plaintiff alleges defendant committed a tort under common law, is not present here. Thus, the ruling that the four year fraud limitations period applies is not inconsistent with the Fifth Circuit's directive.

### Applicable Limitations Period For Texas

### Common Law Claim of Unfair Competition

 As to the state law unfair competition claims, which are governed by a two year statute of limitations, Derrick has alleged that SWC engaged in unfair competition under the common law of Texas. First Amended Complaint, ¶ 26.[13] The question before the Court on this motion for summary judgment is whether or not Derrick's claim for common law unfair competition is barred by the statute of limitations.

 SWC argues that the statute of limitations for unfair competition in Texas is established as two years, and thus that all of Derrick's causes of action that accrued before January 14, 1992 are barred. Limitations Motion, at 2. It appears that Derrick intends its statute of limitations arguments for the Section 43(a) claim to apply to the common law unfair competition claim. Derrick thus argues that the four year statute of limitations for fraud, Tex.Civ.Prac. & Rem. Code § 16.004, should be applied.

As stated previously, the general limitations period for torts is two years, as provided by Tex.Civ.Prac. & Rem.Code § 16.003(a). Although no Texas or Fifth Circuit cases have addressed specifically the appropriate limitations period for a common law unfair competition claim based on trademark infringement, the Fifth Circuit has held that the two year limitations period under Section

---

**13.** Trademark infringement is a specific instance of the more broadly defined tort of unfair competition, and the same facts generally support a suit for either. *Marathon Mfg. Co. v. Enerlite Products Corp.,* 767 F.2d 214, 217 (5th Cir.1985);

*Boston Professional Hockey Ass'n v. Dallas Cap and Emblem Mfg.,* 510 F.2d 1004, 1010 (5th Cir.1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

16.003(a) is appropriate for other types of unfair competition claims. In *Daboub v. Gibbons,* 42 F.3d 285, 290 (5th Cir.1995), a copyright case, the Fifth Circuit concluded that the two year Texas limitations period was applicable to the unfair competition claim asserted by the plaintiff. *See also Coastal Distributing Company, Inc. v. NGK Spark Plug Co., Ltd,* 779 F.2d 1033, 1038 (5th Cir. 1986) (two year limitations period under article 5526, the predecessor to Section 16.003, held to apply to unfair competition claim based on wrongful acquisition and use of trade secrets); *J.M. Huber Corp. v. Positive Action Tool of Ohio,* 879 F.Supp. 705, 708 (S.D.Tex.1995) (Section 16.003(a) two year period held to apply to an unfair competition claim based on misappropriation of trade secrets or misappropriation of confidential information); *First National Bank of Eagle Pass v. Levine,* 721 S.W.2d 287, 289 (Tex. 1986) (approving *Coastal*'s ruling that the two year statute of limitations applies to unfair competition claims).

The Court has discovered no cases in which the four year period was applied to an unfair competition claim.

Therefore, the Court holds that a two year statute of limitations applies to Derrick's unfair competition claim. While this result is inconsistent with the Section 43(a) four year limitations period, the historical context of each claim seems to require this result. This is no more or less peculiar than, for example, a case involving both negligence and fraud claims, which have different statutes of limitations.[14] Therefore, all of Derrick's unfair competition claims that accrued prior to January 14, 1992 are time-barred.

### Discovery Rule

■ Since the four year limitations period for fraud does not encompass all the Section 1125 claims alleged by Derrick, analysis of the discovery rule is necessary.[15] Derrick argues in its Limitations Opposition that, because of the application of the Texas discovery rule, Defendants have failed to prove that the statute of limitations had begun to run at all. Limitations Opposition, at 6–7.

■ The discovery rule provides a reprieve to a plaintiff who did not file suit within the applicable limitations period. Under the rule, "the statute of limitations does not begin to run until the claimant discovers or, in the exercise of reasonable diligence, should have discovered the facts establishing a cause of action." *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990); *see also Schaefer v. Gulf Coast Regional Blood Center,* 10 F.3d 327, 331 (5th Cir.1994). Texas courts have applied this exception to the statute of limitations only to "accrual" limitations statutes, *i.e.,* "statutes which have failed to define when a cause of action accrues." *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 353 (Tex.1990). By contrast, in cases in which the Texas Legislature has specifically defined the date or event that triggers accrual, the Texas courts have refused to apply a discovery rule. *Id.*

■ The Texas Supreme Court has recently stated that it applies the discovery rule when (1) "the nature of the injury is inherently undiscoverable" and (2) "the evidence of injury is objectively verifiable." *Computer Associates International, Inc. v. Altai, Inc.,* 38 Tex.Sup.Ct.J. 740, 1995 WL 341543 (Tex. June 8, 1995); *Patrick v. How-*

---

**14.** *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (two year limitations period applies to negligence claims); Tex.Civ.Prac. & Rem.Code Ann. § 16.004 (four year limitations period applies to fraud claims). There are numerous other examples of such inconsistencies in statutes of limitations. *See, e.g.,* Geoffrey C. Hazard, Jr., *Introduction* (for *Symposium: The Restatement of Suretyship* ), 34 Wm. & Mary L.Rev. 985, 987 (1993) ("It is familiar that legal evolution results in significant differences in the legal rules governing transactions that are substantially alike from an economic or social viewpoint. A classic anomaly, for example, is that the statute of limi-

tations for an economic injury is typically longer if the wrong is classified as contract than if it is classified as a tort, unless the wrong is classified as trespass to land, in which case a longer statute of limitations applies.")

**15.** This discussion does not apply to Derrick's state law unfair competition claim. The law is clear that the discovery rule is inapplicable to unfair competition claims. *Daboub v. Gibbons,* 42 F.3d 285, 291 n. 10 (5th Cir.1995) (discovery rule is not applicable to claims of conversion, misappropriation, or unfair competition).

*ard,* 904 S.W.2d 941, 944 (Tex.App.—Austin, 1995 n.w.h.). However, the Texas Supreme Court has cautioned that the discovery rule is "merely an exception" to the general rule concerning the time of accrual with regard to certain classes of cases, *Trinity River Authority v. URS Consultants,* 889 S.W.2d 259, 262 (Tex.1994), and that it is "still cautious in its extension of the discovery rule and hesitant to adopt it absent compelling reasons to show that a whole class of cases is being unjustly served by the general rule of accrual." *Diesel Fuel Injection Service, Inc. v. Gabourel,* 893 S.W.2d 610, 612 (Ct.App.—Corpus Christi, 1994). The party asserting the discovery rule has the ultimate burden of proving and securing favorable findings thereon. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988).

The discovery rule has been consistently applied to fraud cases in Texas. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990); *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438, 440 (1940). Fraud is most often a dispute in which one party claims injury arising from deceptive conduct by another on which the first party relied. *See Williams v. Khalaf,* 802 S.W.2d 651 (Tex.1990). This is somewhat different from Derrick's claims, which are that others, namely the public, were misled into believing SWC's parts had Derrick's approval. The Court has not been cited to nor found in its independent research a decision in any jurisdiction applying the discovery rule to Section 1125(a) claims or trademark cases.[16] The closest authority involving Texas law is *Daboub v. Gibbons,* 42 F.3d 285, 291 n. 10 (5th Cir.1995), which states that the discovery rule is not applicable to claims of conversion, misappropriation, or unfair competition. In addition, recently, the Texas Supreme Court in *Altai* declined to apply the discovery rule to a claim of misappropriation of *trade secrets,* noting that "[n]o state supreme court has yet adopted the discovery rule for trade secret cases as an exercise of its common law jurisdiction." *Altai,* Tex.Sup.Ct.J. at 743, 1995 WL 341543 at *4.

■ Since Derrick's Section 1125 claims are most analogous to misappropriation conversion and unfair competition claims, in that SWC is alleged to have used Derrick's part numbers and labels without permission, the Court will adopt the reasoning in *Daboub* and *Altai,* and holds that the discovery rule is inapplicable to Derrick's Section 1125 trademark claims.

### Continuing Tort Doctrine

Derrick next argues that the statute of limitations does not bar its trademark and unfair competition claims regardless of which statutes of limitations apply because the "continuing tort doctrine" applies. Limitations Opposition, at 2–4.

■ Trademark infringement is a continuing tort in Texas. *Two Pesos, Inc. v. Gulf Insurance Co.,* 901 S.W.2d 495, 500–01 (Tex.App.—Houston [14th Dist.] 1995, no writ).[17] However, the legal rule that trademark infringement is a continuing tort does not resolve the issue of whether or not the statute of limitations has begun to run. The Fifth Circuit has explained that there are two types of continuing violations. The first type includes cases in which "the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation." *Hendrix v. City of Yazoo City, Miss.,* 911 F.2d 1102, 1103 (5th Cir.1990) (reduction in pay, alleged to have

16. Derrick has cited this Court to *Unlimited Screw Products, Inc. v. Malm,* 781 F.Supp. 1121, 1126 (E.D.Va.1991), in support of its argument that the discovery rule applies to Section 1125(a) claims. However, since the Court in *Unlimited Screw* relied wholly on a Virginia statute to determine when the cause of action accrued, this case is inapposite.

17. SWC's citations to *Daboub,* 42 F.3d 285, and *Makedwde Publishing Co. v. Johnson,* 37 F.3d 180 (5th Cir.1994), are not on point. Although both cases hold that the continuing tort theory does not apply to copyright actions, copyright law and trademark law are fundamentally different, and the Supreme Court has consistently rejected the proposition that a kinship exists between them. *See, e.g., Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 439 n. 19, 104 S.Ct. 774, 787 n. 19, 78 L.Ed.2d 574 (1984).

violated Fair Labor Standards Act, held not to be a continuing violation; recovery barred because limitations period had expired). These claims are such that later violations are inseparable from the earlier ones and thus are all deemed a single wrong. The second type of continuing violation "is one in which an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations." *Id.; see also Two Pesos*, 901 S.W.2d at 500–501. In other words, each violation is a separate identifiable event or act, and thus is separately actionable. Therefore, the question in this case is whether (1) the alleged violations that occurred outside the limitations periods were "closely related" to alleged violations that are not time-barred, or (2) the alleged violations outside of the limitations period were "repeated" instances of an initial violation that occurred outside of the limitations period.

As evidence supporting its continuing tort argument, Derrick offers an SWC invoice dated February 2, 1994, after this suit was filed, showing a "Derrick PWP–DX 38" screen. Exhibit A to Limitations Opposition. Derrick thus argues that there is a question of fact as to when the infringement stopped and when Derrick's cause of action accrued. Limitations Opposition, at 6.

■ A review of the summary judgment record convinces the Court that the alleged infringements were repeated instances of one or more trademark violations, occurring both before and after the statute of limitations began to run. The alleged violations are SWC's sales and display of individual items marked with Derrick trademarks and/or items sold under invoices with Derrick product numbers. Thus each violation "creates a separate cause of action." *Two Pesos*, 901 S.W.2d at 500. Claims for violations within the limitations period will be allowed, but

those violations outside the limitations period are time-barred.[18] Therefore, only those alleged infringements that occurred on or after January 14, 1992 will be considered as evidence of Derrick's common law unfair competition claim, and only those that occurred on or after January 14, 1990 will be considered as evidence of Derrick's claims under Section 43(a) of the Lanham Act.

### *Fraudulent Concealment*

Finally as to limitations, Derrick states that SWC's "fraudulent concealment" of its alleged infringement tolled the statute of limitations until the misrepresentation was discovered. Limitations Opposition, at 8 (*citing Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex. 1988)). Derrick argues that Exhibit B to its Opposition shows public brochures in which the screens are not identified with infringing uses of the Derrick marks, and that other confidential invoices and quotations offered by SWC could not have been discovered by Derrick officials, and were marked "Confidential—Attorneys Only" when produced during this litigation. Limitations Opposition, at 7. Derrick states that it first learned of the infringement in February 1993, and filed suit within a year. *Id.* at 8; Exhibits C and D to Limitations Opposition.

■ The Fifth Circuit laid out the requirements for applying fraudulent concealment to toll the statute of limitations in *Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1363, 1366 (5th Cir.1984). The court stated that a "successful assertion of fraudulent concealment requires the plaintiff to prove that the defendant had actual knowledge of the facts allegedly concealed, and a fixed purpose to conceal the wrong." *Timberlake*, 727 F.2d at 1366. Furthermore, the party asserting the fraudulent concealment defense to the statute of limitations must establish that the allegedly concealing party was "under a duty to make a disclosure but

---

18. The Court rejects Derrick's argument that SWC's argument that their use "was a fair use and that there was no likelihood of confusion," *see* Limitations Motion at 6, creates a question of fact as to whether the causes of action ever accrued, and therefore precludes summary judgment. *See* Limitations Surreply, at 4–5. Alter-

native arguments are permitted under long-standing federal practice. It is not necessarily inconsistent for SWC to argue that its use of Derrick's marks was not infringement but that, *if* any infringement occurred, the cause of action accrued at a certain time.

fraudulently conceal[ed] the existence of a cause of action from the one to whom it belongs." *Id.* (*citing Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex.1974)); *see also Patrick v. Howard,* 904 S.W.2d 941, 945 (Tex.App.— Austin 1995, n.w.h.).

▓ Although Derrick would bear the burden at trial to establish the elements of fraudulent concealment, Derrick has not argued or met its burden on summary judgment on the *Timberlake* standard. There is no evidence that SWC was under any duty to disclose its invoices to Derrick. Mere concealment is not fraudulent concealment for purposes of tolling the statute. *Timberlake,* 727 F.2d at 1366. In the *Willis* case, relied upon by Derrick, the discovery rule was applied to a legal malpractice action, and the duty to disclose was found to exist from the fiduciary relationship between attorney and client. The Court stated that accrual of a cause of action should not begin to run until a client discovers or should have discovered the facts establishing the cause of action. *Willis,* 760 S.W.2d at 645–46. There are no comparable circumstances between Derrick and SWC.

Therefore, Derrick has not met its burden of establishing fraudulent concealment by SWC.

### Conclusion as to Statutes of Limitations

The Court holds that:

(a) the Texas four year statute of limitations for fraud, Tex.Civ.Prac. & Rem. Code § 16004, applies to Derrick's claims under Section 43(a), 15 U.S.C.A. § 1125(a);

(b) the Texas two year statute of limitations, Tex.Civ.Prac. & Rem.Code § 16.003(a), applies to Derrick's unfair competition claims;

(c) the discovery rule does not apply at all;

(d) SWC's alleged violations of Section 43(a) and unfair competition are separate wrongs, the statute of limitations for each of which accrues separately, and therefore Derrick can recover for Section 43(a) violations occurring on or after January 14, 1990 and for unfair competition occurring on or after January 14, 1992;

(e) the doctrine of fraudulent concealment does not apply;

(f) summary judgment on the claim under Section 32(1) of the Lanham Act is denied unless SWC submits probative supporting authority addressing the statute of limitations for this provision within ten (10) days of the entry of this order.

## IV. LACHES

Also pending before this Court is Defendants' **Motion for Partial Summary Judgment That All Damages For 'Trademark Related Claims' Incurred Prior to January 14, 1994 Are Barred By Laches** (hereinafter "Laches Motion"). The Court has considered the Laches Motion, SWC's Supplement to the Laches Motion, Derrick's Response, SWC's Reply, Derrick's Surreply, the Response to the Surreply, all exhibits, and the applicable authorities. SWC argues that the equitable doctrine of laches bars Derrick from recovering damages for all claims in paragraphs 22 through 26 of Derrick's First Amended Complaint [19] which were incurred prior to January 14, 1994, the date this action was filed.

▓ Laches is defined as "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1028–29 (Fed.Cir.1992) (en banc); *see also Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 153 (5th Cir.1985). Since laches is an affirmative defense, SWC bears the ultimate burden of proof on this issue. *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.,* 988 F.2d 1157, 1161 (Fed.Cir.1993); *In re Bohart,* 743 F.2d 313, 326 n. 13 (5th Cir.1984). Application of the laches defense is within the discretion of the Court. *National Association of Govern-*

---

**19.** These are the same Lanham Act and unfair competition claims for which SWC argued recovery was barred by the statutes of limitations. For the text of these claims, *see supra* at 803.

**810**

*ment Employees v. City Public Service Board of San Antonio, Texas,* 40 F.3d 698, 707 (5th Cir.1994). " 'Laches is not *established* by undue delay and prejudice. Those factors merely lay the foundation for the trial court's exercise of discretion.' " *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed.Cir.1995) (quoting *Aukerman,* 960 F.2d at 1036) (emphasis in original).

 The elements of the laches defense are (1) a delay on the part of the plaintiff in asserting a right or claim, (2) that is inexcusable, and (3) that results in undue prejudice to the defendant. *National Association of Government Employees,* 40 F.3d at 708; *Geyen v. Marsh,* 775 F.2d 1303, 1310 (5th Cir.1985); *Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1161 (5th Cir.1982). Delay is measured from the time that a plaintiff "knew or should have known" of the alleged infringement. *Aukerman,* 960 F.2d at 1032; *Armco,* 693 F.2d at 1161–62.

 In support of the Laches Motion, SWC has submitted ten exhibits. The first four exhibits are communications between SWC and its customers that contain the name "Derrick" and the marks "PWP" and "MDX." Exhibits A–D to Laches Motion.[20] Although these documents are dated as early as June 15, 1989, there is no evidence that these documents were known—or reasonably could have been known—to Derrick.

The fifth exhibit, the most helpful to SWC's argument, is the March 28, 1995 deposition of Ronald Morrison, General Manager of Derrick Equipment Company, who stated (with some qualification) that he was first aware that SWC was using Derrick part numbers approximately seven to nine years earlier, and that he had brought the issue to the attention of upper management. Exhibit E to Laches Motion, at 57. The sixth exhibit is the March 27, 1995 deposition of William Crabbe, former President of Derrick Equipment Company, which SWC argues establishes that Crabbe had notified management

of SWC's practice of using Derrick part numbers approximately "four or five years" earlier, but that Derrick management had elected to compete in the marketplace rather than to sue. Exhibit F to Laches Motion, at 83–84. This testimony implies that Derrick first may have had knowledge in March 1990, which is after January 14, 1990, when the four year limitations period on the Section 43(a) claim began.

Exhibits G, H, I and J do not meaningfully support SWC's position that Derrick had knowledge of the trademark infringement by June 5, 1989. Exhibits G and H, submitted with SWC's Reply, are photographs of a SWC display at trade shows in 1989 and 1991 that, by SWC's own admission, display no usage of Derrick trademarks. SWC nevertheless argues that the trade show displays "certainly placed [Derrick] on notice of SWC's entry in the market place with a competitive screen." SWC's Reply in Support of Partial Summary Judgment that Damage Awards for "Trademark Related Claims" Incurred Prior to January 14, 1994 Are Barred by Laches [Doc. # 80] (hereinafter "Laches Reply"), at 4–5. Exhibits I and J to the Laches Reply are excerpts of depositions of Robert Derrick and W.W. Derrick, offered by SWC to establish that Derrick officials attended the trade shows in question and therefore must have been aware that SWC was manufacturing replacement parts for Derrick machines. The deposition of W.W. Derrick establishes only that he had "been by" the SWC booth every year, and that he had a recollection, not tied to any year in particular, of seeing a PWP type screen in the SWC booth. Exhibit J to Laches Reply, at 88. The deposition of Robert Derrick states that he was aware that "other people" were manufacturing a PWP type screen "prior to two years ago." Exhibit I to Laches Reply, at 62. There is no evidence that Mr. Derrick knew SWC was doing so. Thus, there is no evidence that these displays contained items with the Derrick trademarks, let alone evidence that SWC was known by Derrick to be making a competing product with an offending trademark.

**20.** SWC's Exhibits A–D are each marked "Confidential—Attorneys Only." The Court assumes

this notation was created during litigation.

Moreover, there is no evidence concerning marks or names relevant to this summary judgment motion other than the PWP screen. This evidence is therefore insufficient to sustain SWC's burden of demonstrating that there is no material question of fact as to Derrick's awareness of the alleged *trademark infringement* of Derrick's marks by SWC prior to the applicable limitations period.

Derrick, on the other hand, has presented evidence that reinforces the existence of a fact question as to when Derrick learned of SWC's conduct. SWC's public brochures describe the same screens as those in SWC's exhibits but do not identify them with infringing uses of Derrick's marks. Exhibit C to Derrick's Opposition to Defendants' Motion for Partial Summary Judgment on the Basis of Laches [Doc. # 70] (hereinafter "Laches Opposition"). Furthermore, other Derrick representatives, in affidavits, state that they first became aware of SWC's allegedly infringing use in February 1993, well within either limitations period. Exhibit A to Laches Opposition (Affidavit of James Derrick), at ¶ 21; Exhibit B to Laches Opposition (Affidavit of John Bakula), at ¶ 2; Laches Opposition, at 4.

Considering all the available evidence, summary judgment is not appropriate here. There remains a genuine question of fact as to the first two prongs of the laches test. As noted above, delay is measured from the time that a plaintiff "knew or should have known" of the alleged infringement. *Aukerman,* 960 F.2d at 1032; *Armco,* 693 F.2d at 1161–62. SWC's ten exhibits are inadequate to establish that Derrick either knew or should have known of the alleged infringement by SWC.[21] For the same reasons, there is also a fact question as to whether or not Derrick's delay was "inexcusable." The Court need not reach the last element of the laches defense, and finds it impossible on the available record to do so.

Since SWC has failed to establish the absence of a genuine issue of material fact as to when Derrick knew or should have known of the alleged infringement, SWC is not entitled to summary judgment on the laches issue.

## V. SWC's SECTION 1111 ARGUMENT

Also pending before this Court is Defendant SWC's **Motion for Partial Summary Judgment That All Damages for Statutory Trademark Infringement of Derrick's Federally Registered Trademark Incurred Prior to January 14, 1994 Are Barred by 15 U.S.C. § 1111** (hereinafter "Section 1111 Motion"). The Court has considered the Section 1111 Motion, SWC's Supplement to the Section 1111 Motion, Derrick's Response, SWC's Reply, Derrick's Surreply, SWC's Response to the Surreply, all exhibits filed with the Court, and the applicable authorities. SWC requests that damages pursuant to claims of statutory trademark infringement made by Derrick, *see* First Amended Complaint ¶ 22, be limited to damages incurred after January 14, 1994, the date that this lawsuit was filed.

SWC argues that Derrick's recovery is barred by 15 U.S.C.A. § 1111 (West 1963 & Supp.1995). Section 1111 prohibits the award of profits or damages for trademark infringement to a registrant who fails to give notice of its registration "by displaying with the mark the words 'Registered in U.S. Patent and Trademark Office' or 'Reg. U.S. Pat. & Tm. Off.' or the letter R enclosed within a circle," unless the defendant in the infringement suit had "actual notice" of the federal registration. 15 U.S.C.A. § 1111 (West 1993 & Supp.1995). SWC argues that Derrick falls under the terms of this provision because Derrick consistently used its mark without an accompanying notice of registration, and that Derrick has produced no evidence of use of a notice of registration accompanying the mark prior to filing of this lawsuit.

Derrick has provided this Court with no evidence establishing that it had given notice of registration by display. Therefore, the Court assumes that Derrick in fact did not give SWC pre-suit notice of Derrick's regis-

---

**21.** Derrick has also argued that the availability of the legal defense of the statute of limitations precludes SWC's attempt to secure the same relief through the equitable remedy of laches. Laches Opposition, at 10. Since the Court concludes for other reasons that SWC has failed to establish that the laches defense should apply, the Court does not reach Derrick's argument.

tration of any of its trademarks. The dispositive question thus is whether or not SWC had "actual notice" of Derrick's registration.

The parties have not presented direct authority as to who has the burden of proof on Section 1111.[22] The Court's research has been inconclusive. While one might assume Section 1111 would constitute an affirmative defense and thus place the burden on defendant, there is authority stating that § 1111 is *not* an affirmative defense, but rather a limitation on remedies. *See U.S. v. Sung*, 51 F.3d 92, 94 (7th Cir.1995) *(citing Louis Vuitton, S.A. v. Pun Yang Lee*, 875 F.2d 584, 587 (7th Cir.1989)). *See also* 1A Jerome Gilson and Jeffrey M. Samuels, *Trademark Protection and Practice* § 8.08[1] at 8–173 (1995) (section 1111 "prohibit[s] recovery of profits and damages under certain circumstances"). The Court therefore holds that Derrick, as plaintiff, has the burden of proof on this issue.

Derrick argues that a genuine issue of material fact exists as to whether SWC had actual notice of Derrick's registration.[23] Derrick points to the following matters in support of its argument:

(1) The "DERRICK" mark is listed on the principal register.[24]

(2)(i) SWC is sophisticated in trademark matters, as evidenced by its display of its own trademarks and treatment of other company's trademarks;

(ii) SWC had an attorney advising the company in order to avoid trademark infringement;[25] and

(iii) SWC was aware of Derrick's "superior reputation," "established name," and "excellent image."

(3) When, during its deposition of SWC's prior attorney, Derrick attempted to learn about SWC's knowledge of the Derrick marks, SWC's attorney objected and claimed that the information was privileged. The deponent, Mr. Larry Phillips, SWC's prior attorney, then stated that he had discussed the matter with SWC but thought he had not given any legal opinions.[26]

Derrick's Opposition to Defendants' Motion for Partial Summary Judgment Limiting Damages for Statutory Trademark Infringement of Derrick's Federally Registered Trademark [Doc. # 71], at 3–4. Derrick argues that, based on this evidence, a reasonable juror could conclude that SWC had actual notice of registration of the "DERRICK" mark.[27]

Individually, the matters listed above might be insufficient to defeat SWC's motion for summary judgment. However, the Court, in viewing all the evidence together, concludes that Derrick satisfies its burden to establish there is a genuine question of fact regarding actual notice.[28] Therefore, SWC is

22. The only case cited by SWC in support of its assertion that Derrick has the burden of proof on Section 1111 is *Howard Stores Corporation v. Howard Clothing, Inc.*, 311 F.Supp. 704 (N.D.Ga. 1970). The *Howard Stores* analysis under Section 1111 conclusory at best. The Court's opinion on the subject, in its entirety, is as follows: [A] review of the record reveals no evidence that defendant had actual notice of plaintiff's trademark registration prior to the filing of this suit and plaintiff clearly is not entitled to profits or damages under the Lanham Act. 15 U.S.C. § 1111. Furthermore, there is no evidence at all that plaintiff has suffered actual damages or lost profits. *Howard Stores*, 311 F.Supp. at 705.

23. SWC has not submitted evidence that it did not have actual knowledge. Instead, it asserts that Derrick has the burden to show SWC's actual knowledge.

24. Derrick argues that this provided SWC with "constructive knowledge" of its mark. However,

constructive notice is not sufficient since the statute plainly requires "actual knowledge." 15 U.S.C.A. § 1111; *see also* 1 Gilson & Samuels, § 4.06.

25. Deposition of Richard von Drehle (Exhibit B to Derrick's Opposition), at 90–91.

26. Derrick's Surreply in Opposition to Defendants' Motion for Partial Summary Judgment Concerning Damages for Statutory Trademark Infringement [Doc. # 87], at 3; *id.*, Exhibit A (Deposition of Larry Phillips), at 159–60.

27. It appears that Derrick failed to pursue discovery of SWC's actual notice.

28. Given the holding that there is a fact question regarding actual notice, this Court need not reach Derrick's argument that notice would not be required for damage recovery under 15 U.S.C. § 1117(b).

not entitled to summary judgment on the basis of Section 1111.

## VI. *CONCLUSION*

For the reasons stated above, it is ordered as follows:

- Defendants' **Motion for Partial Summary Judgment Based on Inequitable Conduct** [Doc. # 41] is **DENIED;**

- Defendants' **Motion for Partial Summary Judgment That Damage Awards for 'Trademark Related Claims' Incurred Prior to January 14, 1992 Are Barred by the Statute of Limitations** [Doc. # 39] is **DENIED IN PART AND GRANTED IN PART;** in particular,

 (a) the Texas four year statute of limitations for fraud, Tex.Civ.Prac. & Rem. Code § 16004, applies to Derrick's claims under Section 43(a), 15 U.S.C.A. § 1125(a);

 (b) the Texas two year statute of limitations, Tex.Civ.Prac. & Rem.Code § 16.003(a), applies to Derrick's unfair competition claims;

 (c) the discovery rule does not apply at all;

 (d) SWC's alleged violations of Section 43(a) and unfair competition are separate wrongs, the statute of limitations for each of which accrues separately, and therefore Derrick can recover for Section 43(a) violations occurring on or after January 14, 1990 and for unfair competition occurring on or after January 14, 1992;

 (e) the doctrine of fraudulent concealment does not apply;

 (f) summary judgment on the claim under Section 32(1) of the Lanham Act is denied unless SWC submits probative supporting authority addressing the statute of limitations for this provision within ten (10) days of the entry of this order.

- Defendants' **Motion for Partial Summary Judgment That All Damages for 'Trademark Related Claims' Incurred Prior to January 14, 1994 Are Barred by Laches** [Doc. # 44] is **DENIED.**

- Defendants' **Motion for Partial Summary Judgment That All Damages for Statutory Trademark Infringement of Derrick's Federally Registered Trademark Incurred Prior to January 14, 1994 Are Barred by 15 U.S.C. § 1111** [Doc. # 40] is **DENIED.**