Margaret WINTERS, Plaintiff,

v.

DIAMOND SHAMROCK CHEMICAL COMPANY, et al., Defendants.

No. 1:93–CV–0164.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 25, 1996.

Benton Musslewhite, Houston, TX, William R. Power, Pappas Power & Marcus, Chicago, IL, for Plaintiff.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, John C. Sabetta, Lord Day & Lord, New York City, Myron Kalish, Shea & Gould, New York City, William Krohley, Steven P. Caley, Kelley Drye & Warren, New York City, John G. Bissell, Strong Pipkin Nelson & Bissell, Beaumont, TX, Henry G. Miller, Lawrence T. Daloise, Jr., Morton G. Miller, Clark Gagliardi & Miller, White Plains, NY, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before this Court is the Defendants' Motion for Summary Judgment, filed by Diamond Shamrock Chemical Company et al. Plaintiff Margaret Winters claims that the defendants negligently and defectively designed, formulated, tested, manufactured and marketed Agent Orange and that, as a result, her exposure to Agent Orange caused her to develop non-Hodgkin's lymphoma, a form of cancer. For the reasons stated below, this Court finds that the defendants should prevail as a matter of law on plaintiffs' claims on statute of limitations grounds. This court therefore GRANTS defendants' motion.

## FACTUAL BACKGROUND

Plaintiff Margaret Winters (Winters), a registered nurse, was employed by the United States Agency for International Development in 1966. Following a six-month orientation program, Winters was sent to Vietnam in August of 1966. Winters worked as a nurse in Vietnam until October of 1967.

While in Vietnam, Winters lived in the city of Saigon and worked in a hospital called Choray, which was in Cholon, a suburb on the outskirts of Saigon. Except for a few short trips, Winters spent all of her time in Saigon and Cholon.

Within several months of her arrival in Vietnam, Winters developed a blister on her left eye. The blister eventually healed, but a similar blister subsequently developed on her right eye. The second blister eventually went away as well.

Winters returned to the United States in 1967, after being in Vietnam for approximately fourteen months. From 1967 until her death in 1996, Winters lived in Chicago, Illinois.

Approximately ten years after returning to the United States, in February of 1977, Winters noticed a hemorrhage in her left eye. The hemorrhage disappeared in a couple of weeks, but later reappeared. In 1979, the same symptoms appeared in her right eye. In 1980, Winters was told that she might have lymphoma.

In June of 1981, Winters learned that tumors were present behind both of her eyes. She underwent radiation treatment, which greatly reduced the size of the tumors. In August of 1983, Winters developed a lump under her arm which was subsequently diagnosed as non-Hodgkin's lymphoma.

Despite the fact that Winters is unable to identify any direct exposure to Agent Orange during her time in Vietnam, she alleges that her lymphoma was caused by exposure to the herbicide. In 1993, Winters filed suit alleg-

ing claims of negligence, strict products liability and breach of warranty based on allegations that the defendants negligently and defectively designed, formulated, tested, manufactured and marketed Agent Orange.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the moving party is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986).[1]

It is unnecessary for the movant to negate elements of the nonmovant's case. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990). If the movant shows that no genuine issues of fact exist, however, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Little v. Liquid Air Corp., 37 F.3d 1069, 1071 (5th Cir.1994) (citing Celotex, 477 U.S. at 325, 106 S.Ct. at 2553). The nonmovant's burden is not satisfied with

> "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 497 U.S. at 871–73, 110 S.Ct. at 3177–81, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994).

Little, 37 F.3d at 1075. At this point, summary judgment is appropriate if the nonmoving party fails to come forward with sufficient facts and law demonstrating a basis for recovery. Id. at 1071.

The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. Eastman Kodak v. Image Technical Servs., Inc., 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992); Anderson, 477 U.S. at 255, 106 S.Ct. at 2513–14; Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. However, this favorable presumption for the nonmovant exists only when the nonmovant presents an actual controversy of fact. The court will not assume controversy when insufficient facts exist to sustain the party's complaint. Little, 37 F.3d at 1075; see Lujan, 497 U.S. at 888, 110 S.Ct. at 3188–89.

### II. Statute of Limitations Analysis

■ This case is properly before this court pursuant to 28 U.S.C. § 1442(a)(1). " 'A federal court's role under § 1442(a) is similar to that of a federal court sitting in diversity.' " Gallelli v. Professional Ins. Management, 1994 WL 45729, at *3 (E.D.Pa. Feb. 10, 1994) (citing Mitchell v. Aluisi, 872 F.2d 577 (4th Cir.1989)). Accordingly, the federal court applies the choice of law rules of the forum state to determine the applicable law. Gallelli, 1994 WL 45729, at *3. The choice of law rules of Texas thus determine which state's statute of limitations applies to plaintiff's claims.

Therefore, in the context of limitations, Texas substantive law controls the issues present in the instant litigation. See, e.g., Woodruff v. A.H. Robins Co., Inc., 742 F.2d 228, 229 (5th Cir.1984) (per curiam). The issue of law before this court with regard to defendants' motion is whether plaintiff's claims are barred by the applicable statute of limitations. The negligence and products lia-

---

1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. Id.; see also Judwin Properties, Inc. v. United States Fire Ins. Co., 973 F.2d 432, 435 (5th Cir.1992).

bility claims will first be addressed. The warranty claims will be analyzed separately.

### A. Negligence and Products Liability Claims

■ Winters asserts claims of negligence and strict products liability based on allegations that defendants negligently and defectively designed, formulated and manufactured Agent Orange. In Texas, causes of action for personal injuries arising out of negligence and strict products liability claims are governed by a two-year statute of limitations, which specifically provides in pertinent part that "a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986 & Supp.1996). Therefore, claims which are not brought within a two-year period from the date the cause of action accrues are barred as a matter of law.

■ Generally, a cause of action accrues when a wrongful act causes an injury. *Timberlake v. A.H. Robins Co., Inc.,* 727 F.2d 1363, 1364 (5th Cir.1984). Winters was in Vietnam between August of 1966 and October of 1967 and is alleging that exposure took place at some undefined time during this fourteen month stay in Vietnam. If Winters was in fact exposed to Agent Orange, her cause of action accrued no later than October of 1967. Under this general rule, she would have had two years from the date of her departure from Vietnam to bring suit.

■ Texas courts have recognized an exception to this general rule, the "discovery rule," which applies where a claimant is unable to know of an injury or the cause of an injury at the time it occurred. *Id.* When the discovery rule applies, the statute of limitations is tolled until the Plaintiff discovers, or through the exercise of reasonable care and diligence should have discovered, the nature of her injury and its cause in fact. *See, e.g., Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085, 1092 (5th Cir.1991), *cert. denied,* 503 U.S. 1011, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992); *Mann v. A.H. Robins Co., Inc.,* 741 F.2d 79, 81 (5th Cir.1984); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d

348, 351 (Tex.1990). Giving Winters every possible chance to recover, this court will assume that the discovery rule is applicable in this situation, meaning that the accrual of the cause of action was not in October of 1967, but rather some later date.

Although Winters suffered from hemorrhages in both eyes in the late 1970s, was told that she might have lymphoma in 1980 and underwent radiation treatment for tumors behind both eyes in 1981, her lymphoma was not diagnosed definitely until 1983. Assuming that the discovery rule applies and that the events occurring prior to the definite diagnosis in 1983 did not trigger the running of the statute of limitations, Winters had two years from the date of the diagnosis or shortly thereafter because at that point she either knew or should have known of the alleged cause of her injury.

■ The long-standing rule is that a plaintiff has an affirmative duty to attempt to determine the cause of her injury. " 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of every thing to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.' " *Wood v. Carpenter,* 101 U.S. 135, 141, 25 L.Ed. 807 (1879) (citations omitted). As stated by the Fifth Circuit, "[a] plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed." *Jensen v. Snellings,* 841 F.2d 600, 607 (5th Cir. 1988).

Winters did have notice of the possible link between exposure to Agent Orange and her lymphoma. She was diagnosed definitely with lymphoma in 1983, and thus knew then if not before that she had serious health problems. Furthermore, according to her deposition, Winters had read newspaper reports concerning alleged health effects from the spraying of Agent Orange in Vietnam at or about the same time of her diagnosis.

■ Moreover, Winters was a registered nurse. It is assumed that someone with her knowledge and experience in the nursing field would have access to information about possible health effects of Agent Orange exposure and would be aware of these effects. Even more importantly, Winters is charged with this knowledge due to extensive publicity in general about the subject. A plaintiff is charged with knowledge of information that has been made public through the media. *See generally United Klans of America v. McGovern,* 621 F.2d 152 (5th Cir.1980) (affirming order granting summary judgment on ground that action was barred by statute of limitations, where plaintiffs, by exercise of due diligence, should have known of their claim more than a year prior to the time they filed their action, since defendants' press conference should have put them on notice of their claim and imposed a duty to investigate the possibility of a claim).

Well before 1993 when Winters eventually filed suit alleging a link between Agent Orange exposure and her lymphoma, Winters was living in Chicago when much publicity focused on Agent Orange-related news stories. In January of 1984, an Agent Orange Bill was passed by the U.S. House of Representatives. The bill provided disability benefits to veterans exposed to Agent Orange. News reports describing the bill appeared on national news programs and in the Chicago Sun–Times. Cancer was specifically identified as one of the compensable diseases. Additionally, as early as 1984, news articles in the Chicago Tribune and the Chicago Sun–Times described claims of health effects, including cancer generally and non-Hodgkin's lymphoma specifically, allegedly caused by Agent Orange exposure. Specific articles that appeared in May of 1984 reported the story of Admiral Zumwalt and his son, Russell, who claimed that Russell's lymphoma was caused by exposure to Agent Orange in Vietnam. Other articles in the Chicago Tribune and Chicago Sun–Times in 1984 recounted the highly publicized testimony of Vietnam veterans before a Chicago City Hall Commission investigating claims of health injuries resulting from exposure to Agent Orange. Additionally, on September 4, 1987, an Associated Press article appeared in both the Tribune and the Sun–Times. That article reported that "VA scientists said they found 'statistically significant' higher rates for lung cancer and non-Hodgkin's lymphoma ... For non-Hodgkin's lymphoma, the rate is 110 percent greater than the expected number."

Also, in 1984, there was extensive publicity concerning the preparations for the class action trial of the claims of over two million Vietnam veterans, which culminated in the $180 million settlement reached on May 7, 1984. For months following the announcement of the settlement, both local and national media detailed the settlement terms and the fairness hearings held by Judge Weinstein in several cities, including Chicago on August 13 and 14, 1984.

In sum, Winters, a registered nurse with many years' experience in the medical profession, can be fairly held to have known of, understood, and assessed the significance of the many developments concerning the "Agent Orange story" that were widely disseminated in the news media during the 1980s, or under the circumstances, a person of her education and experience objectively should have so known. Given the fact that Winters was put on notice of a possible claim by 1983 due to her diagnosis of non-Hodgkin's lymphoma that was simultaneous with extensive media coverage of possible links between Agent Orange and serious health problems, including non-Hodgkin's lymphoma, her claim accrued at the latest by the mid–1980s, either 1984, 1985 or 1986. Winters has failed to show there are material issues of fact to escape the applicable statutes of limitations, and therefore, defendants are entitled to judgment as a matter of law. Thus, claims by Winters alleging negligence and liability for defective manufacturing, marketing and warning must be dismissed as time-barred.

### B. Breach of Implied Warranty Claim

■ Winters also claims that defendants breached implied warranties of fitness in the design and manufacture of Agent Orange. As previously discussed, Texas substantive law controls the issues present in the instant

litigation, including the statute of limitations defense. *See, e.g., Woodruff,* 742 F.2d at 229. In Texas, a claim based on an alleged breach of an implied warranty must be brought within four years after the cause of action accrues. TEX.BUS. & COM.CODE ANN. § 2.725(a) (Vernon 1994). In warranty cases, "a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and a breach of warranty occurs on the date the goods are delivered. *Id.; see also Timberlake,* 727 F.2d at 1367.

■■■■ The Texas Supreme Court has expressly held that actions based on breach of warranty are not subject to the discovery rule unless future performance was contemplated under the contract. *Safeway Stores, Inc. v. Certainteed Corp.,* 710 S.W.2d 544, 546 (Tex.1986). The Court also stated in *Safeway* that only express warranties may explicitly extend to future performance. *Id.* Since Winters has asserted a claim based on a breach of an implied, rather than express, warranty, it appears that the discovery rule is inapplicable in this situation.

Assuming then that the discovery rule does not apply, 1967 is the latest year in which defendants could have delivered to the United States for use in Vietnam any Agent Orange to which Winters could have been exposed since she left Vietnam in that year. Under Texas statutory law, therefore, the claim for breach of implied warranty accrued no later than in 1967. Furthermore, as discussed previously with respect to the negligence and products liability claims, even if the discovery rule does apply, any claims by Winters were time-barred by the mid–1980s, either 1984, 1985 or 1986, at the latest.

Winters has failed to show there are material issues of fact concerning a delay in the accrual of the applicable statutes of limitations and defendants are entitled to judgment as a matter of law. Therefore, because Winters brought suit in 1993, she failed to bring her breach of implied warranty claim within the four-year statute of limitations period after the cause of action accrued and this claim must be dismissed.

## CONCLUSION

Any claim that existed for Winters was time-barred by the time she filed suit in 1993. As a result, defendants have succeeded in showing there is no genuine issue of material fact regarding any of plaintiffs' claims which would allow recovery. Furthermore, defendants have shown as a matter of law why they should prevail against plaintiffs. Because of this finding, the court pretermits ruling on Defendants' Joint Motion for Summary Judgment asserting the Government Contractor Defense.

It is therefore ORDERED that Defendants' Motion for Summary Judgment be GRANTED at Plaintiffs' costs.